HUGH MCLEAN *vs.* MAYOR OF HOLYOKE.

Suffolk. September 23, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Mandamus.  Municipal Corporations.  Holyoke.*

A writ of mandamus will not be granted to compel a public officer to perform a specific executive act which in a substantial degree depends upon the exercise of his judgment and sagacity.

A writ of mandamus will not be granted to compel the mayor of Holyoke, under the charter of that city contained in St. 1896, c. 438, to affix his approval to a contract with the petitioner, executed by him and the school committee of that city and authorized by that committee over the mayor's veto, which the mayor in good faith has refused to approve on the ground that when other expenditures already authorized have been met the appropriation for school supplies will be insufficient to make the payments called for by the contract.

RUGG, C. J. This is a petition for a writ of mandamus * to compel the mayor of the city of Holyoke to affix his approval to a contract executed with the petitioner by the school committee of that city. The contract provides for the purchase of desks and chairs for a school building at a cost of $1,885.50. The material facts are that the school committee in making up the annual estimate for expenses for schools for the current year did not have in mind the furniture in question, although fairly needed for the accommo-

---

* Heard by *Hammond,* J., who made a finding of facts and reported the case for determination by the full court.

dation of pupils, and later sent a communication to the board of aldermen (which is the legislative body of the city) asking a sufficient appropriation for this purpose. That request has not been acted upon. Later the school committee voted to award the contract for this furniture to the petitioner. The mayor vetoed this vote when presented to him for approval and thereupon the school committee passed it over his veto by the requisite majority. The contract in question then was prepared and executed, but for its validity the approval of the mayor is required. This he refuses, on the ground that there is no sufficient appropriation. The unexpended balance of the appropriation for school supplies, at the time the school committee passed the vote and signed the contract, was largely in excess of the amount required to pay for the furniture, but it will be needed in large part for the absolutely necessary school supplies for the year, and if the expense of this contract is charged against that account the appropriation already made will be insufficient for the needs of the year by $1,200 to $1,400.

All parties are acting in good faith. The governing provisions of the charter of the city of Holyoke are found in St. 1896, c. 438. Sections 29 and 32 provide that the management and control of the public schools shall be vested in the school committee, which shall exercise the powers and discharge the duties imposed by law upon school committees. The school committee, among other boards, is required by § 47 to furnish to the mayor annually in January an itemized and detailed estimate of the moneys needed for its department during the ensuing financial year. A board of apportionment composed of three city officers is directed, after examination, to submit the same with an itemized and detailed apportionment to the legislative board which then votes the appropriations. Section 49 provides that "no sum appropriated for a specific purpose shall be expended for any other purpose, and no expenditure shall be made nor liabilities incurred by or in behalf of the city until an appropriation has been duly voted . . . sufficient to meet such expenditure or liability, together with all prior unpaid liabilities which are payable out of such appropriation," with exceptions not now material. Section 52 provides that no contract like that here in question "shall be deemed to have been made or executed until the approval of the mayor is affixed thereto."

The appropriation for "school supplies" for 1913 was the gross sum of $18,500 without further itemization. It is apparent, however, from the requirement that a detailed estimate be presented in January by the school department of moneys needed by it, and the further obligation resting upon the board of apportionment to examine such estimates and submit them to the board of aldermen with their own recommendations, that the appropriations as finally made were based upon the original detailed estimates of the school committee and were for the specific purposes therein pointed out. In the detailed estimate submitted by the school committee for the year 1913, under the general heading "school supplies," made up of several separate items, $1,000 was asked for furniture. The contract in question calling for an expenditure in excess of that sum, there is strong ground for the argument that, although the appropriation actually made by the city government was under the single heading "school supplies" it did not exceed, for any subdivision, the amount indicated in the estimate of the school committee, and hence a contract for furniture larger than the detailed estimate originally submitted by the school committee would be in excess of the appropriation voted. But it is not necessary to decide this point, because upon another ground the petitioner cannot prevail.

An officer can be compelled to perform his duty by exercising his discretion, although he will not be commanded to exercise it in a particular way. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162. But it is a familiar principle that the writ of mandamus will not be granted to compel the performance of a specific executive act dependent in a substantial degree upon the exercise of judgment and sagacity. The opinion of the court upon such a question is not to be substituted thus for that of a public officer acting in good faith. *French* v. *Jones,* 191 Mass. 522, 532. *Deehan* v. *Johnson,* 141 Mass. 23. This present case does not present a mere ministerial function into the doing of which no element of sound discretion enters, as in *Braconier* v. *Packard,* 136 Mass. 50. It goes further and requires the exercise of practical wisdom in the administration of the affairs of the city. While it is conceivable that cases might arise, where refusal by a mayor to sign a contract under charter provisions like these might present a proper instance for the issuance of

a writ of mandamus, the case at bar is not of that class. It is a plain provision of the city charter that the contract shall not be valid until it receives the approval of the respondent as mayor. Approval implies direct affirmative sanction. It is clear that the mayor does not approve in this sense the contract in question. It cannot be said that his refusal to approve it is whimsical or capricious, nor that the exercise of the power of refusal to approve is being abused or perverted by colorable pretenses. It well may be regarded as not in accordance with sound municipal policy, good judgment, nor right principles of conducting public business to charge an extraordinary expenditure of this sort and size, which was not thought of at the time the estimates were made and votes passed, against an appropriation needed for ordinary expenses of a department, even though not yet exhausted by contracts actually made. There is ample ground for the belief that such a contract would be in direct violation of the spirit of § 49 of the charter. Under these circumstances the petition for a writ of mandamus ought to be refused. See *Smith* v. *Commissioner of Public Works,* 215 Mass. 353.

*Petition dismissed.*

The case was submitted on briefs.

*C. T. Callahan,* for the petitioner.

*T. J. O'Connor & W. H. McClintock,* for the respondent.