Galassi Mosaic & Tile Co. *vs.* City of Boston.

Suffolk.    October 6, 1936. — October 28, 1936.

Present: Rugg, C.J., Crosby, Pierce, Field, & Lummus, JJ.

*Public Officer.   Actionable Tort.   Deceit.   Municipal Corporations,* Liability for tort, Officers and agents. *Boston.*

Officers of the transit department of the city of Boston acting under Spec. St. 1918, c. 185, in the construction of the East Boston Tunnel pursuant to St. 1929, c. 297, were public officers for whose deceit the city was not liable.

Tort.   Writ in the Superior Court dated May 24, 1935.

A demurrer to the declaration was sustained and the action was reported by *Walsh,* J.

*H. Snyder,* (*S. L. Bailen* with him,) for the plaintiff.

*J. B. Sullivan,* Assistant Corporation Counsel, (*L. H. Weinstein,* Assistant Corporation Counsel, with him,) for the defendant.

Pierce, J.   This is an action of tort.   The declaration alleges, in substance, that the plaintiff, a duly organized corporation, is engaged in the manufacture and sale of mosaic and tile; that by St. 1929, c. 297, it was provided that the city of Boston should proceed with the laying out and construction of a tunnel, which should consist of two or more roadways or lanes for vehicular traffic, under Boston Harbor, between the city of Boston proper and the East Boston end thereof; that pursuant to said legislative requirements one Wilbur W. Davis, an engineer in the employ of the defendant, in its transit department, conferred with the president of the plaintiff corporation relative to the furnishing and proper installation of the material for the interior surfacing of the East Boston Tunnel; that it was then and there stated (by said Davis) to the plaintiff "that because of the various and divers problems existing, and particularly of the necessity of adequate drainage and ventilation, and to avoid corrosion and destruction by reason of moisture,

. . . it was essential that a surfacing material somewhat different, and peculiarly adapted to the situation should be devised for use in said Tunnel"; that at the request of the defendant acting through its duly authorized agents and representatives, the plaintiff "undertook and began a process of experimentation necessitating much time, effort and study relative to the devising of a suitable material for the use in the interior surfacing of said East Boston Tunnel, which could be properly and adequately applied"; that "after long and arduous preparation and scientific labor, the plaintiff developed a tile which could be set directly upon the concrete wall, without the use of a base of terra cotta or concrete"; that subsequently the plaintiff was informed by engineers of the city of Boston "that it had been demonstrated that only one and three quarters inches could be allowed for the lining or surfacing material and that because of seepage and the deposit of calcium carbonate formations it was requisite that there be an air space behind the tiling and provision made for gathering and taking care of said seepage"; that, thereupon, the plaintiff continued its experimentation and study of said problem in an effort to devise a material and method of installation suitable for use in the tunnel; that after long and arduous study and experimentation the plaintiff successfully developed a process involving the use of a tile eight inches by eight inches, with grooves across the back and stainless steel rods set horizontally in cement in the upper and lower grooves, being fastened by stainless clips and expansion bolts set in cement against the concrete walls, thereby at once taking care of the problem of drainage and circulation of air behind the lining and at the same time meeting the limited space requirements; that "said process, and the method of installation, were entirely novel, having never been developed or used elsewhere in the trade and being hitherto unknown to the defendant"; that "the use of said tile and method of installation was not only entirely novel but was peculiarly adapted to the surfacing requirements of said East Boston Tunnel in that it provided for maximum effective drainage, convenient and speedy replacement of any part that might

become damaged"; that it would entirely solve the problem
raised by exigencies of space requirements and would pro-
vide a tile which was nonstaining, attractive in appearance,
entirely durable and affording a maximum light reflection
with a minimum of glare; that a period of a year and a half
was consumed by the plaintiff in the experimentation and
scientific labor required for the adaptation and perfection
of said tile and method of installation; that throughout this
period the plaintiff through its duly authorized president
was in frequent and constant consultation with the officers
and agents of the defendant; that throughout the progress
of the work the defendant was constantly apprised of the
work being carried on by the plaintiff; that demonstrations
were made by the plaintiff for the benefit of said agents and
representatives of the defendant for the purpose of showing
the practicability and advantage in the use of material and
installation devised and adapted by the plaintiff as afore-
said; that upon the completion of said work, at the request
of the defendant, its agents and representatives, a section
of said lining was erected and set up at the office of the transit
department of the city of Boston and another section was
erected and set up at the East Boston Tunnel in order to
demonstrate its application to the walls of said concrete
tunnel; and that said work of experimentation and scientific
labor were undertaken by the plaintiff upon the understand-
ing with the agents and representatives of the defendant
that "if the plaintiff was successful in this new type of sur-
facing material and method of installation . . . it would be
awarded the contract for the surfacing of said . . . Tunnel
by reason of the fact that said process or device would be
entirely novel and unknown to the general trade, and by
reason of said novelty it would result that the plaintiff would
be the only one to whom said contract could be given after
the practicability and durability of said device was satis-
factorily demonstrated." The declaration further alleged
that after the completion of this work by the plaintiff, as
aforesaid, and after said materials had been set up and dem-
onstrated to the defendant, it was then represented to the
plaintiff for the first time that it was necessary, by virtue

of the statutory provisions and the requirements of the city ordinances, that the contract for the surfacing of the tunnel be let only after public advertising and sealed competitive bidding; that it was further represented to the plaintiff that if it would furnish the specifications for use in said contract and for the purpose of inviting competitive public bidding, and would bid upon said specifications, it would necessarily be the lowest responsible bidder and be awarded the contract, and would thereby be rewarded for the publication of said process and method of installation; that thereafter the said transit department advertised for sealed proposals for the furnishing and installation of tile for said tunnel completely and entirely in accordance with the specifications prepared by the plaintiff and the process of tiling material and method of installation devised and invented by the plaintiff as aforesaid; that in full and complete reliance on the officers and agents of the defendant the plaintiff submitted a sealed bid for the work; and that subsequently and on or about August 16, 1933, it was announced by said transit department of the defendant that a contract for the furnishing and installation of tile of said East Boston vehicular tunnel in accordance with the plans entirely devised by the plaintiff, as aforesaid, had been awarded to The C. M. Tyler Company. The plaintiff further alleged "that these representations made by the officers and agents of the defendant . . . acting within the course of their employment and within the scope of their authority, were entirely false and fraudulent and were known to said officers and agents to be entirely false and fraudulent; that said process or device invented and perfected by the plaintiff, being entirely novel and being an original process, was not required to be submitted to competitive bidding; that said representations were falsely and intentionally made for the purpose of causing the plaintiff to undertake the experimentation and scientific labor required in perfecting and adapting said process or device, and in order to effect the publication of said process or device and thus obtain a valuable property right belonging to the plaintiff without cost or expense to the defendant; that by reason of its utter and complete reliance

upon the representations of the officers and agents of the city of Boston that it was necessary to submit said contract to sealed competitive bidding and that if the plaintiff drafted the specifications and submitted its bid, . . . it would be awarded a contract for such surfacing work, the plaintiff was caused to lose and did lose a valuable property right which could have been protected from general use by patent under the laws of the United States of America made and provided therefor."

The defendant demurred to the plaintiff's declaration "because the facts as alleged do not constitute or establish a cause of action, either from breach of contract, or actionable tort . . . ." The trial judge sustained the demurrer after hearing and reported his order on demurrer to this court in the following terms: "This case came on to be heard upon the demurrer of the defendant which I have sustained; but being of opinion that said order ought to be determined by the full court before any further proceedings are had in this court, I now report the case for that purpose and hereby stay all further proceedings except such as are necessary to preserve the rights of the parties. The writ, declaration and demurrer and my order thereon are incorporated herein by reference and made a part hereof."

The plaintiff in its brief contends that its declaration "is grounded in tort for deceit by reason of false representations and properly sets forth false and fraudulent representations of material facts, known to the defendant to be false and fraudulent, having been made with the intention that the plaintiff act thereon and that the plaintiff did act thereon to . . . [its] damage." The plaintiff does not contend in its brief that under the writ and declaration it has any right to recover against the defendant upon an express or implied contract, and we shall consider the case on the assumption that the plaintiff concedes it has no right in contract against the defendant.

The representations made by the defendant and relied on by the plaintiff were (A) "that it was necessary by virtue of the statutory provisions and requirements of the City Ordinances that the contract for the surfacing of said

East Boston Tunnel be let only after public advertising and sealed competitive bidding," and (B) "that said process or device would be entirely novel and unknown to the general trade, and by reason of said novelty it would result that the plaintiff would be the only one to whom said contract could be given after the practicability and durability of said device was satisfactorily demonstrated." It was decided in *Simpson* v. *Marlborough*, 236 Mass. 210, 213, that "persons having business relations with cities and towns are bound to take notice of the scope of the authority of those professing to act as agents, for the reason that the matter, being controlled by public law, is equally open to the knowledge of all." Applying this rule, and assuming that representations A and B were made by officers or agents of the transit department of the city of Boston, the plaintiff, with all other members of the public contractually dealing with the city of Boston "acting by the transit department of the city of Boston," was bound to know that under St. 1929, c. 297, § 7, "No contract for construction work" could be awarded "unless proposals for the same have been invited by advertisements in at least one newspaper published in the city," and that such advertisements "shall state the time and place where plans and specifications of proposed work . . . may be had."

The plaintiff contends that the statutory requirement as to advertising and for sealed competitive bidding contained in St. 1929, c. 297, § 7, is not applicable to the facts of this case, because under § 2 of said act the department ascertained that by reason of peculiar problems and exigencies of space a new surfacing material and device and a new method of application were necessary; that the plaintiff was asked to meet this problem and undertook so to do, and that after a year and one half of scientific labor perfected a process unknown to the world which was well adapted for usage in the particular tunnel. This position applied to patented articles is supported by *State* v. *Board of Purchase & Supplies*, 111 Conn. 147, *Silsby Manuf. Co.* v. *Allentown*, 153 Penn. St. 319, 322, *Baird* v. *Mayor, Aldermen & Commonalty of New York*, 96 N. Y. 567, 582,

and is denied in *Mayor & Common Council of Newark* v. *Bonnell*, 28 Vroom, 424, *Dean* v. *Charlton*, 23 Wis. 590, and *Nicolson Pavement Co.* v. *Painter*, 35 Cal. 699. Plainly the defendant's agents or representatives, out of an abundance of caution, were justified in directing the plaintiff's attention to the statutory requirement that proposals for contracts under St. 1929, c. 297, shall be advertised, and it is equally plain that the statement made related to and had to do with a question of law and not of fact, and was not a denial of the right of the plaintiff to be awarded the tentative contract with or without competitive bidding.

If it be assumed that the quoted representation was a misrepresentation as to the effect of the statutory provision for advertising and competitive bidding, that it was not applicable to the facts and therefore false, the defendant cannot be liable for a false representation of law, because the record does not disclose that the defendant was possessed of superior knowledge of the requirements of St. 1929, c. 297, § 7, or that it knew that the plaintiff had not such knowledge and took advantage of the plaintiff's ignorance to allure it to submit a sealed bid for said work, thereby procuring from the results of the plaintiff's experimentation and scientific labor, contained in specifications prepared by the plaintiff, the process of tiling material and method of installation devised and invented, but not patented, by the plaintiff. *Jekshewitz* v. *Groswald*, 265 Mass. 413, 417, and cases cited.

If it be assumed that the statements were made by officers of the transit department of the city of Boston, and it be further assumed that the statements were either false representations of fact or actionable false representations of law, the defendant is not liable in this action, because the city of Boston is required by St. 1929, c. 297, § 1, to construct a tunnel and to act "by the transit department of the city of Boston." The department and its officers are not agents of the defendant but public officers. *Murphy* v. *Hugh Nawn Contracting Co.* 223 Mass. 404. *McGovern* v. *Boston*, 229 Mass. 394. The reason for the rule that a municipality is not liable for the misfeasance or

wrongs or omissions of duty of subordinate officers or agents employed in the public service is that to hold it liable would involve the municipality in endless embarrassments and difficulties which would be subversive of public interests. The plaintiff recognizes the rule that a municipality is not liable for tortious acts of its public officers, but contends that since Spec. St. 1918, c. 185, the then existing transit commission ceased to exist as an independent body and became merely a department of the city of Boston. Its members are appointed by the mayor, their compensation is fixed by the mayor and city council, and they are under the complete control of the city of Boston. We think, however, that by every legal test the department of the city of Boston, created by Spec. St. 1918, c. 185, was created by the Legislature for public service only, with a purpose that its members, when named by the mayor, should be independent public officers, save when the statute otherwise expressly provides.

It follows that the entry should be

*Order sustaining demurrer affirmed.*