CONTINENTAL CONSTRUCTION CO. *vs.* CITY OF LAWRENCE.

Essex. March 3, 1937. — June 28, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Municipal Corporations*, Municipal finance, Officers and agents, Contracts.

A vote by a city council that, due to conditions resulting from an extreme amount of snow, "an extreme emergency involving the health and safety of the people" was "declared," was not evidence of the existence of the "extreme emergency" which under G. L. (Ter. Ed.) c. 44, § 31, would warrant an expenditure by the city for snow removal in excess of appropriations.

A contractor could not recover upon a contract with a city for the removal of snow where, in making the contract, requirements of G. L. (Ter. Ed.) c. 44, § 31, and pertinent requirements of the city charter were not observed.

Section 14 of G. L. (Ter. Ed.) c. 44 does not permit the enforcement against a city of a claim prohibited by its charter.

An action against a city upon a contract for the removal of snow from the streets made by a city officer having the powers of surveyors of highways under G. L. (Ter. Ed.) c. 84, § 7, could not be maintained where it did not appear that the city had failed to provide sums sufficient to make the ways "reasonably safe and convenient."

CONTRACT. Writ in the District Court of Lawrence dated August 19, 1935.

The action was heard by *Dooley*, J., who found for the defendant. Upon report to the Appellate Division for the Northern District, judgment was ordered entered for the plaintiff. The defendant appealed.

*J. A. Costello*, City Solicitor, for the defendant.

*W. P. Reilley*, for the plaintiff.

QUA, J. The plaintiff seeks to recover for the use of trucks and tractors in plowing and hauling snow on and from the streets of the city as ordered by the alderman who, in accordance with the city charter, had been chosen director of the department of engineering. St. 1911, c. 621, Part II, § 41.

All the work was done and the charges therefor were incurred in the month of February, 1935, before the regular appropriations had been made for that fiscal year. No special appropriation was made to cover these items, and during that month the city incurred liabilities for similar purposes greatly in excess of the sums spent for such purposes during any one month of the preceding year and therefore in excess of the sum authorized by G. L. (Ter. Ed.) c. 44, § 34. Hence, even if we assume that the authority conferred by that section is to be treated as the equivalent of an appropriation, the alleged liability of the city to the plaintiff was incurred in violation of the city charter, St. 1911, c. 621, Part II, § 34 (see also § 35), and likewise in violation of G. L. (Ter. Ed.) c. 44, § 31, both of which sections forbid the incurring of liability in excess of appropriations, unless this was a case of "extreme emergency" within the express exception contained in the section last mentioned. That exception reads as follows: "except in cases of extreme emergency involving the health or safety of persons or property, and then only by a vote in a city of two thirds of the members of the city council, and in a town by a vote of two thirds of the selectmen."

At the trial no evidence was introduced bearing upon the existence of an extreme emergency, except that on January 28, 1935, the city council by unanimous vote passed this order: "Whereas: Due to the conditions of the City because of the extreme amount of snow, an extreme emergency involving the health and safety of the people is hereby declared; Therefore, be it ordered: That the Director of Engineering be, and hereby is ordered to take all necessary means and expend any amounts of money necessary to expeditiously and thoroughly relieve these conditions." The plaintiff contends that this order creates a presumption, or constitutes *prima facie* evidence, of the existence of such emergency. The defendant contends that it is not even evidence of such emergency, and that the plaintiff must fail in the action for lack of proof that any emergency existed.

In *Flood* v. *Hodges,* 231 Mass. 252, at 256, it was said

that the original municipal indebtedness act, from which the present § 31 is derived, "was an innovation in the administration of the financial affairs of cities" to which it related; that it was an act of broad application, repealing general and special acts inconsistent therewith; and that "The manifest purpose of the framers of the act was to set rigid barriers against expenditures in excess of appropriations . . . and in general to put cities upon a sound financial basis so far as these ends can be achieved by legislation." The prohibitions of such an act must not be weakened, nor the exceptions enlarged, by constructions which might tend to break down the safeguards designed to be set up or to admit of the evils intended to be prevented. Section 31 prohibits in general terms the incurring of liability in excess of the existing appropriation. Then follows a carefully limited exception expressly conditioned, first, upon the existence of "extreme emergency involving the health or safety of persons or property," and second, upon a vote of two thirds of the members of the city council. These are limitations upon the lawful exercise of the powers of the city council. The conditions which will permit the lawful incurring of extraordinary indebtedness must exist in truth and in fact. We can discover nothing to support a construction which would permit a city council to shake off the limitations imposed upon it by merely declaring the existence of a state of emergency and then authorizing the incurring of liabilities to an unlimited amount for an unascertained period of time, nor do we think that such a declaration has any presumptive or evidential force in establishing the existence in fact of an emergency. *Merrill* v. *Lowell*, 236 Mass. 463. Decisions in other States upon statutes differing in wording from our own and with a different background of interpretation are not persuasive to the contrary. *Los Angeles Dredging Co.* v. *Long Beach*, 210 Cal. 348. Compare *Green* v. *Okanogan County*, 60 Wash. 309, and *Stern* v. *Spokane*, 60 Wash. 325. There is no analogy whatever between the powers of a city council acting under statutory limitations and the power of the General Court to declare a law an emergency law under the express

provisions of art. 48 of the Articles of Amendment of the Constitution.

One dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant's charter have not been observed. *Dyer* v. *Boston,* 272 Mass. 265, 274. *McHenry* v. *Lawrence,* 295 Mass. 119, 122, and cases cited. *Peters* v. *Medford,* 295 Mass. 588, 591–592. We need not consider what effect § 14 of c. 44 might have, if the defence rested entirely upon § 31 of that chapter, for § 14 can in no event give relief against the prohibition of the charter. And, at least where the question is seasonably raised, the burden of proving compliance must rest upon the plaintiff as with other essential elements of his case. *Smith* v. *Hill,* 232 Mass. 188. No presumption as to the regularity of the acts of public officers can take the place of such proof. *Wood* v. *Concord,* 268 Mass. 185, 188–189.

The plaintiff further contends that because under the charter the director of the department of engineering has the powers of surveyors of highways (St. 1911, c. 621, Part II, § 40), he was acting within the authority to remove snow expressly conferred upon surveyors of highways by G. L. (Ter. Ed.) c. 84, § 7. But the latter statute gives surveyors of highways no authority to make contracts in behalf of the town, except where the town "neglects to vote a sufficient amount" or to make other effective provision therefor. *Loker* v. *Brookline,* 13 Pick. 343. *Blanchard* v. *Ayer,* 148 Mass. 174. *Wormstead* v. *Lynn,* 184 Mass. 425, 427. *Tuckerman* v. *Moynihan,* 282 Mass. 562, 567. There was no evidence that the city had failed to provide sums sufficient to make the ways "reasonably safe and convenient."

> *Order of the Appellate Division reversed.*
> *Judgment for the defendant on the finding.*