HARRY F. COOK *vs.* THE OVERSEERS OF THE PUBLIC WELFARE IN THE CITY OF BOSTON.

SAME *vs.* CITY OF BOSTON.

Suffolk.    February 8, 9, 1939. — July 7, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Boston. Municipal Corporations,* Officers and agents, Contracts. *Contract,* Of employment, Validity.

On the evidence, a finding was warranted that employment of an expert in the employment division by a board constituted of individuals who were at the same time the overseers of public welfare of the city of Boston established by ordinance and the corporate members of the corporation, The Overseers of the Public Welfare in the City of Boston, was not an employment by the corporation.

No action could be maintained against the city of Boston for salary during the term of employment by the overseers of the public welfare of Boston of an expert in the employment division where the employment was without an approval by the mayor required by ordinance although services rendered by the plaintiff were valuable to the city.

TWO ACTIONS OF CONTRACT, the first against the corporation, The Overseers of the Public Welfare in the City of Boston, begun by writ in the Municipal Court of the City of Boston dated September 5, 1937, and the second against the city, begun by writ in the Superior Court dated March 1, 1938.

On removal of the first action to the Superior Court, the actions were heard together by *Donnelly,* J., who found for the defendants and reported his findings and rulings to this court.

*H. L. Barrett,* for the plaintiff.

*R. H. Hopkins,* Assistant Corporation Counsel, for the defendants.

LUMMUS, J. G. L. (Ter. Ed.) c. 117, § 2, provides that "the board of public welfare shall have the care and oversight of all such poor and indigent persons [i.e. those law-

fully settled in the town and standing in need of relief and support] so long as they remain at the charge of their respective towns." By c. 4, § 7, Thirty-fourth, the word town shall include city. Members of such a board are public officers.* *Orlando* v. *Brockton*, 295 Mass. 205, 207. *Everett* v. *Canton, ante,* 166, 170. By the revised ordinances of Boston (1925) c. 26, § 1, "the public welfare department shall be under the charge of the overseers of the public welfare."

But "The Overseers of the Public Welfare in the City of Boston" had another capacity. That was the name of a corporation,† consisting of the persons who for the time being hold the office, created "to receive, manage lease, let and dispose of . . . , according to their best discretion, to and for the use and benefit of the poor of" Boston, whatever money and property may have been or may be "given,

---

* By St. 1864, c. 128, § 2, the overseers of the poor in the city of Boston were to be twelve in number, elected four each year for three years by the city council. By St. 1885, c. 266 it was provided that the mayor should appoint, subject to confirmation by the board of aldermen, all officers and boards then elected by the city council or board of aldermen. The term was made not more than three years, and was made subject to limitation by ordinance, by St. 1890, c. 418, § 1. By St. 1909, c. 486, § 9, all "members of municipal boards" were to be "appointed by the mayor without confirmation by the city council." The revised ordinances of Boston (1925) c. 2, § 1, provide for appointment of four members each year for a term of three years.

† This corporation was created by Prov. St. 1771–72, c. 20, passed April 25, 1772, and its name was the Overseers of the Poor of the Town of Boston in the Province of the Massachusetts Bay, in New England. A note concerning it is found in 5 Prov. Laws, 187, 188. The act had a preamble which declared that intended gifts to the poor of Boston had been frustrated by the fact that the overseers of the poor were not incorporated. By St. 1802, c. 44 the overseers of the poor of Boston were made a corporation by the name and title of "The Trustees of John Boylston's charitable donations for the benefit and support of aged poor persons, and of orphans & deserted children," to hold the bequests, devises and donations for the purposes above mentioned under the will of John Boylston, late of Bath, England. The existence and powers of these corporations were not affected by the introduction of a city form of government in Boston in 1821. *Overseers of the Poor of the City of Boston* v. *Sears,* 22 Pick. 122, cited in *Hill* v. *Boston,* 122 Mass. 344, 356. By St. 1864, c. 128 the name of the corporation created in 1772 was changed to "The Overseers of the Poor in the City of Boston," and it was provided that the overseers "as such shall continue to hold and possess all the property, and be entitled to all the rights and privileges, and be subject to all the duties, liabilities and obligations, which now belong or appertain to said corporation, whether as successors of the corporation above mentioned, or as successors of the corporation or body politic incorporated by" St. 1802, c. 44. By St. 1888, c. 324 the corporation was authorized to hold property not exceeding one million dollars. By St. 1921, c. 146 "The Overseers of the Poor in the City of Boston," incorporated April 25, 1772, and so named by St. 1864, c. 128, "shall hereafter be known as The Overseers of the Public Welfare in the City of Boston."

granted, bequeathed or devised, by any way or means whatsoever, to the poor of the same town, or to their use."

The principal office of the overseers of the public welfare in the city of Boston, whether as department or as corporation, was in charge of one Dowling, who had authority from the board of overseers to hire employees with the approval of the board. Dowling, after consulting the board, wrote the plaintiff on October 30, 1934, that Dowling had been authorized to engage the plaintiff as an expert for the employment division at a salary of $40 a week. The stationery on which Dowling wrote was used for all the correspondence of the board, as a department and as a corporation. It bore the words "Overseers of the Public Welfare in the City of Boston," and in the upper left hand corner the corporate seal of the corporation. The board of overseers formally voted approval of the plaintiff's appointment on November 7, 1934. The plaintiff began work on November 5, 1934, and worked regularly until September 13, 1936, when he resigned. But his name was removed from the payroll on April 5, 1936, and these actions are brought to recover $40 a week as salary or wages from April 5, 1936, to September 13, 1936. The plaintiff's work was in supervising the obtaining of private employment for recipients of welfare relief, thus relieving the city of the expense of welfare relief. The plaintiff had nothing to do with the administration of trust funds held by the overseers as a corporation. Money for welfare relief was furnished by the city, but the plaintiff had nothing to do with its distribution.

The reason why the plaintiff's name was taken off the payroll on April 5, 1936, was that the authorization of his provisional temporary appointment by the civil service commissioner of the Commonwealth expired on that day. He had passed the civil service examination for permanent appointment as supervisor of employment, but no appointment was made. He continued to work upon the assurance of Dowling that he would be paid, but he knew that his name was not on the payroll and that the mayor had not approved his employment after April 5, 1936. The board of overseers approved his continued employment.

The judge properly found, and perhaps could even have ruled, that the plaintiff was not employed by the defendant corporation "The Overseers of the Public Welfare in the City of Boston." The work of the plaintiff had nothing to do with its corporate purposes.

As a department of the city, the board of overseers were restricted by the revised ordinances of Boston (1925) c. 3, § 12, which provided that "before any increase shall be made . . . in the number of subordinates, a report thereof shall be sent to the mayor, and no such increase shall take effect until approved by the mayor, in a writing filed with the city auditor." So far as appears, the original employment of the plaintiff was in violation of this provision, although later the mayor approved it until April 5, 1936. Surely his employment after April 5, 1936, was in violation of the ordinance, and the mayor never approved it. The fact that the services furnished by the plaintiff were valuable, does not impose upon the city a duty to pay for them, where the employment was not authorized by law. *Boston Electric Co.* v. *Cambridge,* 163 Mass. 64. *Simpson* v. *Marlborough,* 236 Mass. 210. *Dyer* v. *Boston,* 272 Mass. 265, 274. *Galassi Mosaic & Tile Co.* v. *Boston,* 295 Mass. 544, 549. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513, 515.

In each case the entry will be

*Judgment for the defendant.*