Jane F. Sweeney *vs.* City of Boston.

Suffolk.    December 3, 1940. — May 26, 1941.

Present: Field, C.J., Donahue, Qua, Dolan, & Ronan, JJ.

*Municipal Corporations*, Liability for tort, Public schools.   *School and School Committee.   Public Officer.   Boston.*

The school committee of Boston in permitting use of part of a school building, owned by the city but under the committee's control, for an entertainment pursuant to St. 1912, c. 195, § 1, as amended by Spec. St. 1916, c. 86, were public officers, and the city would not be liable to one attending the entertainment for injury caused by negligence of the committee's servant, although a charge for such use was made and was paid to the city.

Tort.    Writ in the Superior Court dated January 12, 1938.

The action was tried before *Good*, J.

*L. W. Black*, for the plaintiff.

*R. H. Hopkins*, Assistant Corporation Counsel, (*N. Moger*, Assistant Corporation Counsel, with him,) for the defendant.

Dolan, J.   This is an action of tort to recover compensation for personal injuries sustained by the plaintiff as a result of falling down a stairway in a public school building, in the city of Boston, known as the "Teachers College and Girls' Latin School Building."   The case was tried to a jury and at the close of the plaintiff's case the judge granted the defendant's motion for a directed verdict, subject to the plaintiff's exception.   The jury returned a verdict for the defendant, as directed, and the case comes before us on the report of the judge, the parties having stipulated that if the verdict for the defendant was properly ordered, judgment shall be entered accordingly, otherwise judgment shall be entered for the plaintiff in a stated sum.

The evidence would warrant the jury in finding the following facts: On June 21, 1937, one Sullivan applied to

the director of extended use of the public schools, a subordinate of the school committee of Boston, for permission to use two halls and four rooms in the school building, before referred to, on October 22, 1937, for a "bridge, whist and beano" entertainment. The application was received by the director pursuant to § 385 of the "Rules of the School Committee and Regulations of the Public Schools of the City of Boston," adopted under the authority of St. 1912, c. 195, § 1, as amended by Spec. St. 1916, c. 86. The director approved the application and sent Sullivan a letter on September 8, stating that a charge of $33.45 was made for the proposed use of the school accommodations. Sullivan paid that sum to the director's secretary, who transmitted it to the office of the business manager of the committee who turned it over to the city collector. All funds received by the committee are turned over to the city collector and by him to the city treasurer, are put to the credit of the school committee, and are all used for purposes of the school committee. The sum charged in the present case was based upon certain schedules adopted by votes of the school committee. Only $3.51 of the total charge was not expended for expenses incurred by the committee in connection with the use of the building on the night of the entertainment.

After paying the charge made, Sullivan procured a temporary entertainment license on September 20, 1937, for "Bridge, whist & beano" on October 22, 1937, from the licensing division at City Hall, paying therefor a fee of $2. Tickets were sold for the affair in advance, and could be procured at the door of the school on the night of its occurrence, by any member of the public who should choose to purchase one.

The plaintiff, an elderly woman, had purchased a ticket in advance. Immediately after passing through the main door of the building she stopped in the entrance to the vestibule proper, located about eight feet distant, to take her ticket out of her bag. There was a throng of people there, and as the "crowd was going along" she took one step to the right and fell down a stairway, which was about

eighteen inches from the door through which she had entered. An electric light bulb affixed to the wall over the landing of this staircase was not lighted, and the stairway was unguarded at the point where the plaintiff fell. Further facts which the jury could have found relative to the accident and its proximate cause need not be recited, since, even if it be assumed that the employees of the school committee who were on duty in the building that night (the custodian of the building and assistants) were negligent, that the plaintiff's injuries resulted therefrom, and that she was in the exercise of due care, she cannot recover.

St. 1912, c. 195, § 1, as amended by Spec. St. 1916, c. 86, reads as follows: "For the purpose of promoting the usefulness of the public school property of the city of Boston, the school committee of that city may conduct such educational and recreative activities in or upon school property under its control, and shall allow the use thereof by individuals and associations, subject to such regulations as the school committee may establish, for such educational, recreative, social, civic, philanthropic and similar purposes as the committee may deem to be for the interest of the community: provided, that such use shall not interfere or be inconsistent with the use of the premises for school purposes."

The school committee of the city of Boston is a board of public officers whose duties are prescribed by statute, and in the execution of its duties its members act not as agents of the city but as public officers in the performance of public duties. *McKenna* v. *Kimball,* 145 Mass. 555, 556. The appropriations it may make are fixed by statute. St. 1936, c. 224. Its powers concerning the taking of land and construction of new school buildings thereon, as well as alterations, repairs and equipment, are set forth in St. 1929, c. 351, under which the commissioners of school buildings and the department of school buildings are made responsible to the committee rather than to the mayor and city council, or either. By St. 1875, c. 241, § 5, it is provided in part that the committee "shall appoint jani-

tors for the school-houses, fix their compensation, designate their duties, and may discharge them at pleasure." The amendment of this section by St. 1933, c. 121, does not affect that provision. While the city charter of the defendant city confers broad powers upon the mayor and city council, there is nothing therein that confers upon them control of the committee in the performance of the duties imposed upon it as a board of public officers, or of its agents or servants in the execution of those duties. Provisions in St. 1936, c. 224, under which the mayor is given a veto power over appropriations voted by the committee (which may be overridden by the committee by the same vote as is required to pass them in the first instance), provisions of the city charter whereby certain employees of the school committee are defined as employees of the city for pension purposes, and those requiring a list to be furnished annually to the city auditor of all persons paid by the city or county, and similar provisions of the city charter (St. 1909, c. 486, as amended), do not affect the status of the school committee as an independent board of public officers. A reading of the charter as a whole discloses a recognition therein of the school committee as an independent body set apart from the departments of the city itself. There is nothing in conflict with this view in *Trustees of Public Library* v. *Rector of Trinity Church*, 263 Mass. 173, 176.

Although the title to the school building in question is in the city, by force of the statutes the building is in the sole control of the committee. The plaintiff's counsel concedes in his brief that the building involved was "under the control and general charge of the school committee," and not subject to "municipal regulation and inspection." The authority to permit the extended use of school buildings, under which the permission for use was granted in the present case, is conferred by statute upon the school committee, not upon the city government or any of its officers or agents. In exercising that authority, whether for profit or otherwise, the members of the committee acted as public officers, for whose torts or those of its

agents or servants liability cannot be imposed upon the city, which had no voice in or control over the matter.

The decisive fact is that the school committee of the city of Boston are not officers or agents of the city itself, but public officers. It is the established law of this Commonwealth that in the absence of express statutory provisions to the contrary a city is not liable for the torts of public officers or for those of their agents or servants acting in the discharge of public duties imposed upon such officers. *Manners* v. *Haverhill,* 135 Mass. 165, 171. *Mahoney* v. *Boston,* 171 Mass. 427, 430. *Attorney General* v. *Stratton,* 194 Mass. 51, 53. *Galassi Mosaic & Tile Co.* v. *Boston,* 295 Mass. 544, 550. *Ryder* v. *Lexington,* 303 Mass. 281, 287, 289. *Adie* v. *Mayor of Holyoke,* 303 Mass. 295, 300. *Ryder* v. *Taunton,* 306 Mass. 154, 159. It is likewise settled that a "municipality can exercise no direction or control over one whose duties have been defined by the Legislature." *Daddario* v. *Pittsfield,* 301 Mass. 552, 558, and cases cited. *Breault* v. *Auburn,* 303 Mass. 424, 428. *Gibney* v. *Mayor of Fall River,* 306 Mass. 561, 565.

The plaintiff's contention that the case is governed by "a combination" of such cases as *Worden* v. *New Bedford,* 131 Mass. 23, *Little* v. *Holyoke,* 177 Mass. 114, and *Baumgardner* v. *Boston,* 304 Mass. 100, cannot be sustained. In each of the first two cases the hall which was let for valuable consideration was situated in the city hall itself and under the control of the city authorities. In the *Baumgardner* case the "commercial enterprise" was voluntarily entered into by an agency of the city itself. The decisive elements in those and similar cases relied upon by the plaintiff are not present in the case at bar.

It follows from what has been said that judgment must be entered for the defendant in accordance with the directed verdict.

*So ordered.*