SCHOOL COMMITTEE OF BOSTON & others[1] *vs.* FINANCE
COMMISSION OF BOSTON & others.[2]

Suffolk.    October 1, 1973. — October 17, 1973.

Present:    TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN,
& WILKINS, JJ.

*Boston Finance Commission. Investigating Body. School and School
Committee.*

The Finance Commission of Boston has the authority to investigate testi-
monials and other fund raising activities for members of the School
Committee of Boston under St. 1909, c. 486, § 18, which empowers the
Finance Commission to investigate any matter which may have a
reasonable relation to the finances and management of the city of
Boston. [189-192]

The authority of the Finance Commission of Boston to investigate the
School Committee of Boston would not be destroyed by such improper
acts of Commission members as making public comments on the Com-
mission's investigation or by improper motives of the Commission
members for making the investigation. [192]

BILL IN EQUITY filed in the Superior Court on August 31,
1973.

The case was heard by *Adams, J.*

The case was submitted on briefs.

*Robert M. Murphy* for the plaintiffs.

*Allan van Gestel* for the defendants.

BRAUCHER, J.    These cases bring to us the question
whether the Finance Commission of Boston (commission)
has power to conduct an investigation into testimonials and
other fund-raising activities for members of the School Com-

---

[1]Four members of the School Committee of Boston.

[2]Ralph I. Fine, chairman, and Allan van Gestel, special counsel of the Finance
Commission of Boston.

mittee of Boston (committee). A decree was entered in the Superior Court under G. L. c. 231A, declaring that the commission "has the right and authority to publicly investigate, by all appropriate means, the effect" of such activities "on the administrative, operational, and financial practices and methods" of the committee and the School Department of Boston (department). We affirm.

On May 24, 1973, the commission adopted resolutions and votes whereby it determined to conduct an investigation into the practices of the committee and the department, including testimonials and other fund-raising activities. Public hearings commenced on June 11, 1973, and continued on June 12, 13, and 19. On June 22 the individual plaintiffs, acting for themselves and as members of the committee, brought a suit in the Superior Court under G. L. c. 231A for declaratory and injunctive relief, and obtained temporary orders restraining the defendants from issuing press releases or other comments based on testimony at the hearings and from conducting hearings "or other action on the issue of testimonials or fund-raising activities" of the plaintiffs. Both restraining orders were continued in force by an interlocutory decree of June 27. Also on June 27 the four plaintiffs stipulated in writing that they would not make press releases or comments on testimony at the hearings. At a hearing on the merits on July 23, the court allowed a motion to add the committee as a party plaintiff and to add a prayer for a declaration that the commission lacked authority to investigate the committee.

On August 10, 1973, the judge, adopting as his findings the parties' statement of agreed facts, entered a final decree upholding the authority of the commission. The decree vacated as of August 22, 1973, the interlocutory decree continuing the restraining orders in effect, relieved the plaintiffs of similar restraints imposed by stipulation, and retained the court's jurisdiction of the case.

The plaintiffs appealed from the final decree. On August 28 the judge denied their motion to suspend the final decree pending appeal. The plaintiffs filed a separate claim of ap-

peal from the denial of the motion to suspend, and they filed a petition, again seeking injunctive relief pending appeal, before a single justice of this court pursuant to G. L. c. 211, § 3, and c. 214, § 22. An order denying relief was entered on September 4, 1973, and a bill of exceptions was allowed.

Public hearings into the issue of testimonials resumed. On September 20 special counsel for the commission voluntarily agreed that no further public hearings would be held pending expedited decision by this court on the plaintiffs' appeal from the final decree entered on August 10. The case was submitted to us on September 28 on the original papers and briefs of the parties.

1. The commission, as presently constituted, was established by St. 1909, c. 486, §§ 17-21.[3] Section 18 of that chapter provides: "It shall be the duty of the finance commission from time to time to investigate any and all matters relating to appropriations, loans, expenditures, accounts and methods of administration affecting the city of Boston or the county of Suffolk, or any department thereof, that may appear to the commission to require investigation, and to report thereon from time to time to the mayor, the city council, the governor, or the general court. The commission shall make an annual report in January of each year to the general court."

Three of our decisions provide guidance on the scope of the commission's power. The Legislature intended the commission's range of inquiry to be broad but not unlimited. Its investigations must have a reasonable relation to the finances and methods of management of the city. The commission may "investigtate fairly, by comprehensive but reasonable methods, matters which it is justified in regarding as affecting the finances and management of Boston." Subject to judicial determination whether subpoenas may properly be enforced, the statutes leave to the commission the determina-

---

[3]The commission had its origin in an order passed by the city council and approved by the mayor on January 29, 1907. See 1. (Boston) Fin. Com. Rep. 1-10 (1908). Subsequent legislative provisions are contained in St. 1907, c. 481, and St. 1908, c. 562.

tion in the first instance "whether the inquiry is relevant to the statutory functions, and whether particular methods of inquiry are necessary." *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 760-762 (1962). *Finance Commn. of Boston* v. *Sheriff of Suffolk County,* 349 Mass. 503, 504 (1965). *Finance Commn. of Boston* v. *Basile,* 354 Mass. 188, 192 (1968).

Apart from the special status of the committee, considered hereafter, there seems to be little doubt that its activities may have effects on the finances and management of the city. We need not decide whether it is a "department" of the city for the purposes of the governing statute. Compare *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 233-234 (1941), with *Sweeney* v. *Boston,* 309 Mass. 106, 108-110 (1941). The commission may investigate matters affecting the finances and management of the city, whether or not a "department" is involved. No extended discussion is needed to demonstrate that school problems may have such effects.

The commission concluded that testimonials and other fund-raising activities "may" have a significant effect upon the administrative, operational and financial practices and methods of the committee. The judge thought it "not an unreasonable assumption" that fund-raising conducted by an official among the employees of his department might have such an effect. See *Ex parte Curtis,* 106 U. S. 371, 375 (1882). Hence, he ruled, the commission may investigate such activities unless the committee as such is beyond the reach of the investigatory powers of the commission. We agree.

2. The plaintiffs contend that the committee is "an autonomous political entity," and hence that the commission has no power or jurisdiction over its management. The argument rests in part on the "substantially final authority" over the school budget established by our decisions under G. L. c. 71, § 34. See *Bell* v. *North Reading,* 363 Mass. 505, 510 (1973) and cases cited. The city of Boston has contended in the past that that statute is not "operative" in the city. See *Kerrigan* v. *Boston,* 361 Mass. 24, 33 (1972). We did not

resolve the question raised by that contention, and we do not decide it now. Even if G. L. c. 71, § 34, is not operative in Boston, the committee has apart from the statute a large measure of independence in the management of the public schools. *Lynch* v. *Fall River,* 336 Mass. 558, 560-561 (1958). *Collins* v. *Boston,* 338 Mass. 704, 707-709 (1959). See *School Comm. of Salem* v. *Gavin,* 333 Mass. 632, 634-635 (1956). On the other hand, even where the statute is operative, the power of a school committee is not unlimited. *Bell* v. *North Reading,* 363 Mass. 505, 511 (1973). For example, it is not inconsistent with the traditional pattern to subject certain votes of school committees to review by referendum. G. L. c. 43, § 42. *Gorman* v. *Peabody,* 312 Mass. 560, 566-569 (1942). Compare *Fantini* v. *School Comm. of Cambridge,* 362 Mass. 320, 322-323 (1972).

The traditional supremacy of the committee in the field of education does not lead inevitably to the conclusion that it is immune from investigation by the commission. Whatever the degree of its independence, that independence is conferred by statute and may be changed by statute. We upheld the commission's power to investigate dealings affecting the Boston Housing Authority, even though such an authority is a complete corporate entity in itself, distinct from the municipal corporation within whose territory it is set up. *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 763-764 (1962).

The trial judge relied on items in annual reports of the commission relating to investigations of the committee as showing the commission's practices and interpretation of its authority over the years, sanctioned by the acquiescence of the Legislature, and as providing strong evidence of the authority of the commission. See *Burrage* v. *County of Bristol,* 210 Mass. 299, 301 (1911). The commission has cited to us more than 100 such items. The plaintiffs have moved that the case be remanded so that these reports and other materials referred to in the commission's brief may be introduced in evidence and rebutted, citing *Finlay* v. *Eastern Racing Assn. Inc.* 308 Mass. 20, 27 (1941). Since this

material merely confirms the conclusion we would reach without it, the motion is denied. As to the propriety of considering such materials, see Davis, Administrative Law (1958 ed.) § 15.03, *id.* §§ 15.00, 15.03 (Supp. 1970); McCormick, Evidence, (2d ed. 1972) §§ 330-335.

Apart from the practice of the commission, it is common for the Legislature to conduct investigations, obtain facts, and receive reports through commissions. See *Sheridan* v. *Gardner,* 347 Mass. 8, 12 (1964). The statute establishing the commission contemplates annual reports by the commission to the Legislature, presumably with a view to changes in the law. We do not believe the Legislature intended to deny to the commission the power to obtain facts relevant to needed changes in the law governing matters otherwise within its field of concern. It may investigate school affairs to the same extent that it may investigate other aspects of the administration of the city.

3.   The plaintiffs claim that the individual defendants acted improperly in making public comments on the commission's investigation, and attack several provisions of the rules of the commission as invalid and unfair. The judge excluded evidence of improper conduct of the individual defendants, and refrained, "at least at this time," from making any rules or orders with respect to the conduct of the commission's hearings. He correctly ruled that the jurisdiction of the commission would not be lost by reason of improper motives or improper conduct of the hearings. *Mayor of Everett* v. *Superior Court,* 324 Mass. 144, 150-151 (1949). He also properly followed our decision in the *McGrath* case by retaining jurisdiction so that the parties may apply for additional relief upon short notice as occasion may arise. *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 768 (1962). Further relief would have been premature. *St. Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 470 (1946).

4.   The final decree is affirmed. It is not necessary to consider any questions relating to interlocutory relief pending appeal. The appeal from the interlocutory decree denying

relief pending appeal and the bill of exceptions with respect to the interlocutory ruling of the single justice of this court are dismissed.

*So ordered.*