URBAN TRANSPORT, INC. *vs*. MAYOR OF BOSTON.

Suffolk.    October 5, 1977. — November 17, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*School and School Committee.  Boston.  Municipal Corporations,* Contracts.  *Contract,* With municipality.  *Words,* "Department."

Failure of a bus company, awarded a three-year contract to transport students by the school committee of Boston, to prove that the mayor had approved the contract as required by St. 1890, c. 418, § 6, as amended, necessitated entry of judgment for him in a civil action by the company [695-697]; a conclusion that it was "unreasonable" for the mayor to withhold approval lacked support in the law [697-698]; and without merit was a contention that busing necessary to comply with the racial imbalance law and Federal court desegregation orders validated the contract without the mayor's approval [698-699].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 9, 1975.

The case was heard by *Wilkins*, J., on a master's report.

*Frederick T. Golder* for the plaintiff.

*Kevin F. Moloney*, First Assistant Corporation Counsel (*Herbert P. Gleason*, Corporation Counsel, with him) for the defendant.

LIACOS, J.  The plaintiff bus company, Urban Transport, Inc. (Urban), brought this action in the nature of mandamus in the county court seeking an order to compel the mayor and other Boston officials to approve and execute a three-year school bus transportation contract, and also seeking damages. A special master and commissioner heard the action. The master recommended that the mayor be ordered to approve the contract for the three-year period and that damages be awarded to Urban in the sum of $64,906.40. The single justice confirmed the master's subsidiary findings of fact, but entered judgment for the defendant on the ground that no three-year contract

existed between the parties.[1] From that judgment Urban has appealed to this court.

The master found the following facts:[2] In October of 1974, the business manager of the school department of transportation and safety, pursuant to St. 1909, c. 486, § 30, as amended, published an invitation for bids for the furnishing of transportation to students in the vocational education, occupational resource center, and bilingual programs. Although Urban submitted its bid proposal a few minutes past the twelve o'clock deadline, the school committee voted to award the three-year contract to Urban, the lowest bidder. Prior to acting on the contract, the mayor solicited the opinion of the Finance Commission of Boston (commission) on the advisability of authorizing the execution of this contract with Urban.[3] The commission, relying on many inaccurate findings and conclusions, recommended against entering into a contract with Urban. The report of the commission alleged various irregularities

---

[1] The judge may properly reject under Mass. R. Civ. P. 53, as amended, 367 Mass. 917 (1975), the master's general findings, grounded on legal rulings and conclusions of law. *Central Tow Co.* v. *Boston,* 371 Mass. 341, 342 n.3 (1976).

[2] At an earlier stage of these proceedings, the matter was referred by the single justice to a special master and commissioner. The parties submitted the case to him on a statement of agreed facts and a stipulation. The stipulation provided that, should the court conclude that the mayor's failure to approve the three-year contract with Urban was "unreasonable," the mayor would approve a one-year contract for the school year 1974-1975, and that the stipulation was "without prejudice to the rights of plaintiff to assert a claim to a contract for a period of three years." The interim report of the special master made a recommendation based on this stipulation and the statement of agreed facts that the court find the mayor's refusal to be unreasonable. This report was confirmed by an interlocutory order on May 21, 1975, which also ordered the mayor to approve a one-year contract for the school year 1974-1975. The mayor obeyed this order and approved a one-year contract from October 28, 1974, through June 30, 1975. Neither party sought review of this order. Subsequently, a second special master and commissioner heard evidence and made the recommendations referred to in the text. The findings referred to are those of the second master in a report filed on September 9, 1976.

[3] See St. 1909, c. 486, § 18. See also *School Comm. of Boston* v. *Finance Comm'n of Boston,* 364 Mass. 187 (1973).

and violations of law in regard to Urban's bid and the school committee vote. The commission recommended further investigation by law enforcement authorities. The district attorney for Suffolk County commenced such a criminal investigation. The mayor refused to approve the contract because of this investigation. Urban commenced bus transportation services on October 29, 1974, but the mayor continued to refuse to approve the contract. Thus, this suit was initiated on April 9, 1975.

The second master[4] also found that the mayor's refusal to grant his approval to the three-year contract was "unreasonable." Although Urban contended before the master that the mayor's approval pursuant to the interlocutory order of the single justice constituted approval for a three-year contract, the master stated that the approval was for a one-year contract. The master recommended that the school committee be ordered to assign Urban bus routes for the school year 1976-1977 and that damages should be awarded to Urban based on lost profits for the school year 1975-1976.[5]

We affirm the judgment for the defendant entered by the single justice.

The pertinent statute here, "An Act concerning certain contracts entered into on behalf of the city of Boston and the county of Suffolk," St. 1890, c. 418, § 6, as amended through St. 1955, c. 60, § 1, provides: "All contracts made by any department of the city of Boston ... shall, when

---

[4] In August, 1975, the single justice denied Urban's motion for summary judgment without ruling "on the question whether the Mayor was originally compelled to approve the three year contract when requested to do so by the School Committee on October 25, 1974." On August 11, 1975, Urban brought a separate action, *Urban Transport, Inc.* v. *Kevin H. White,* S.J.C. No. 75-268 Civil, to enjoin the apportioning and awarding to four other carriers in the school year 1975-1976 of certain services which Urban had performed the previous year. The single justice denied Urban's motion for a preliminary injunction on August 27, 1975, and, on May 24, 1976, dismissed the case without prejudice.

[5] The defendant raises various points as to the propriety of the master's method of computation of damages. In the view we take, the issue becomes immaterial.

the amount involved is two thousand dollars or more, . . . be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said city has been affixed thereto in writing."[6]

A contract with the city is not formed until the necessary statutory requirements are fulfilled.[7] *Central Tow Co. v. Boston,* 371 Mass. 341, 344 (1976). As we stated in *Richard D. Kimball Co. v. Medford,* 340 Mass. 727, 729 (1960): "It is familiar law that one dealing with a city or town cannot recover if statutory requirements such as are contained in the defendant's charter have not been observed." See, e.g., *Adalian Bros. v. Boston,* 323 Mass. 629, 632 (1949); *Cook v. Overseers of the Pub. Welfare in Boston,* 303 Mass. 544, 547 (1939); *Fluet v. McCabe,* 299 Mass. 173, 178 (1938); *Continental Constr. Co. v. Lawrence,* 297 Mass. 513, 516 (1937); *Fiske v. Worcester,* 219 Mass. 428, 430 (1914); *Wheaton Bldg. & Lumber Co. v. Boston,* 204 Mass. 218, 226 (1910).

Urban contends that the mayor approved the contract for the entire three-year period. Those who seek to contract with a municipality bear the burden of proving

---

[6] In *School Comm. of Boston v. Finance Comm'n of Boston,* 364 Mass. 187, 190 (1973), we declined to decide whether the school committee of Boston is a "department" of the city. For a city having one of the standard forms of charter established in G. L. c. 43, we have held that the school committee of such a city is a "department." *Richard D. Kimball Co. v. Medford,* 340 Mass. 727, 730 (1960). *Eastern Mass. St. Ry. v. Mayor of Fall River,* 308 Mass. 232, 233 (1941). We have recognized that for some purposes the school committee of Boston may be considered an independent body set apart from the departments of the city. *Sweeney v. Boston,* 309 Mass. 106, 109 (1941). Cf. *Trustees of Pub. Library of Boston v. Rector of Trinity Church,* 263 Mass. 173, 179 (1928). Both parties appear to assume that the school committee of Boston is a "department" within the meaning of St. 1890, c. 418, § 6, and we proceed on that assumption.

[7] Urban's bid was defective in that the bid and deposit check were submitted minutes late. Technically, the school committee could not dispense with public bidding and award the contract to Urban unless the mayor gave his written authority to do so. St. 1909, c. 486, § 30, as amended through St. 1955, c. 60, § 2. While there was no compliance with this statutory provision, the parties have focused their attention for the most part on the mayor's withholding of approval under St. 1890, c. 418, § 6.

compliance with the statutory requirements in the city charter. *Richard D. Kimball Co.* v. *Medford, supra* at 729. *Dos Santos* v. *Peabody*, 327 Mass. 519, 520-521 (1951). *Continental Constr. Co.* v. *Lawrence, supra* at 516. The plaintiff here has not sustained its burden. The master found that the mayor's approval was limited to a one-year contract. That the master used the words "I believe" rather than the phrase "I find" does not make the finding a matter of conjecture, as Urban argues, especially since other portions of the report supported this finding. Furthermore, with the exception of one paragraph dealing with damages, Urban moved to confirm the complete report. *McCray* v. *Weinberg*, 4 Mass. App. Ct. 13, 17 (1976).

Urban argues in the alternative that the mayor cannot unreasonably withhold his approval of a contract validly awarded by the school committee. The master found the mayor's refusal to approve the three-year contract not in bad faith but unreasonable. He based this conclusion on the facts (1) that the school committee awarded the contract to Urban, and (2) that Urban then performed satisfactorily during the 1974-1975 school year.

Nothing in St. 1890, c. 418, § 6, suggests, however, that the mayor's approval is a mere ministerial act to be performed whenever the school committee votes for a contract. Nor does this provision limit the factors which the mayor may consider in deciding whether to approve or not. See *Eastern Mass. St. Ry.* v. *Mayor of Fall River*, 308 Mass. 232, 235 (1941). The purpose of such legislative enactments is to limit the power of public officials in making contracts, *Dyer* v. *Boston*, 272 Mass. 265, 274 (1930), so as to unify the control of the city's commercial transactions, see *School Comm. of Gloucester* v. *Gloucester*, 324 Mass. 209, 218 (1949), and guard against waste by departments in the government, *Singarella* v. *Boston*, 342 Mass. 385, 388 (1961). To accomplish this purpose, the mayor must be able to exercise his "practical wisdom in the administration of the affairs of the city." *McLean* v. *Mayor of Holyoke*, 216 Mass. 62, 64 (1913). See *LeRoy* v. *Worces-*

*ter St. Ry.,* 287 Mass. 1, 7 (1934). Thus, the single justice correctly ruled that the foundation for the master's conclusion of "unreasonableness" lacked support in the law.

This action was commenced after July 1, 1974, the effective date when the writ of mandamus, along with several other writs, was abolished by our new rules of civil procedure. Mass. R. Civ. P. 81 (b), 365 Mass. 841 (1974). Despite the abolition of this writ, the relief once provided under this ancient writ is still available if sought by complaint and summons. *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 2 n.2 (1975). *Beaton* v. *Land Court,* 367 Mass. 385, 386 n.3, appeal dismissed, 423 U.S. 806 (1975). It is well settled that the relief provided in the nature of mandamus does not lie to compel the municipal officer to exercise his or her judgment or discretion in a particular way. *Harding* v. *Commissioner of Ins.,* 352 Mass. 478, 480 (1967). *DeNunzio* v. *City Manager of Cambridge,* 341 Mass. 420, 422 (1960). *M. Doyle & Co.* v. *Commissioner of Pub. Works of Boston,* 328 Mass. 269, 271 (1952). *Marchesi* v. *Selectmen of Winchester,* 312 Mass. 28, 31 (1942). *McLean* v. *Mayor of Holyoke, supra* at 64. The mayor here exercised his judgment by refusing to give his statutory approval to the contract. Absent bad faith, fraud, arbitrariness or capriciousness, we are unwilling to substitute our judgment for the good faith judgment of the mayor. *McLean* v. *Mayor of Holyoke, supra* at 65. Even if the master was of opinion that the city's best interests are served by requiring the award of a contract to Urban, this subjective judgment alone is not sufficient to support an order compelling approval. *Archambault* v. *Mayor of Lowell,* 278 Mass. 327, 334 (1932). The ongoing criminal investigation, although essentially uncovering no wrongdoing on Urban's part, appears to be an adequate basis, devoid of whim or caprice, for the mayor's decision.

Finally, Urban contends that the school committee had the authority to execute the three-year bus transportation contract without the mayor's approval. Urban urges us to hold that, because the busing of students is necessary to comply with the racial imbalance law and Federal court

desegregation orders, school bus transportation is now an integral part of the educational process. Its argument concludes that the school committee should thus have full authority to award and execute such transportation contracts.[8] This argument is wholly without merit.

Urban has made no showing that its buses in particular were needed to comply with a court order for the busing of schoolchildren. Further, we are not convinced that the desegregation rulings somehow transform the commercial nature of a bus transportation contract. In *Eastern Mass. St. Ry.* v. *Mayor of Fall River, supra* at 234-237, the petitioner, a transportation company, unsuccessfully argued that the broad powers of school committees precluded any construction of G. L. c. 43, § 29 (similar to St. 1890, c. 418, § 6), which would limit the committee's power to negotiate and execute a contract for the transportation of schoolchildren. We find no convincing reason to limit the mayor's power to approve and execute what is no more than an ordinary commercial contract.

In view of our disposition of this case, we pass the question of damages and interest.

*Judgment affirmed.*

---

[8] Urban relies on G. L. c. 71, §§ 34, 37C, and 37D, to support its contention that the Boston school committee could execute a valid and binding bus transportation contract without the mayor's approval. None of these statutory provisions supports Urban's position here. As to the nonapplicability of § 34 to the Boston school financing scheme, see *Pirrone* v. *Boston,* 364 Mass. 403 (1973).