LUMAROSE EQUIPMENT CORPORATION vs. CITY OF SPRINGFIELD.

Hampden. February 10, 1983. — March 28, 1983.

Present: GRANT, CUTTER, & KASS, JJ.

*Municipal Corporations,* Contract.

In a city having a Plan A form of government the written approval of the mayor was required under G. L. c. 43, § 29, for the city's exercise of its option to extend the duration of four municipal contracts, and action by the city's purchasing agent alone, purporting to exercise the option, was without effect. [518-521]

A judge erred in ruling that a city could not recover money unlawfully paid to a heavy equipment contractor, both during intervals of certain invalid extensions of four contracts and during intervals when there was no pretense of a written contract. [521-522]

A city having a Plan A form of government was not responsible for alleged breaches of terms of a municipal contract which, through clerical error, were not attached to the contract documents submitted to the mayor for his approval under G. L. c. 43, § 29, and which he signed in good faith, unaware of the omission. [522-523]

CIVIL ACTION commenced in the Superior Court on May 10, 1977.

The case was heard by *Cross, J.,* on a master's report.

*Constance M. Sweeney,* City Solicitor, for the defendant.

*Richard D. Gelinas* for the plaintiff.

GRANT, J. This action in the Superior Court arises out of the city's use in its sanitary landfill during the period September 15, 1971, through March 31, 1977, of certain items of heavy equipment which were owned by the plaintiff and suited to the spreading and compaction of refuse. By its complaint the plaintiff sought damages arising out of the city's alleged failures to maintain the equipment in satisfactory condition, as well as amounts claimed to be due for

the use of the equipment. By its counterclaim the city sought (among other things) recovery of various amounts claimed to have been paid to the plaintiff in violation of G. L. c. 43, § 29, as most recently amended by St. 1973, c. 191.[1] The case was referred to a master (facts final), whose subsidiary findings were adopted by a judge who rejected virtually all the master's ultimate findings and entered an amended judgment adverse to both parties. The city has appealed, but the plaintiff has not.

1. During the period September 15, 1971, through March 31, 1977, there were four separate contracts in writing between the parties concerning the use of the plaintiff's equipment which were signed by the mayor of the city as well as by its purchasing agent (G. L. c. 41, § 103, as amended by St. 1967, c. 79, § 2).[2] Those contracts covered the intervals from September 16, 1971, through September 15, 1972, from October 15, 1972, through April 14, 1973,

---

[1] "All contracts made by any department, board or commission where the amount involved is two thousand dollars or more shall be in writing, and *no such contract shall be deemed to have been made or executed until* the approval of the mayor under Plan A . . ., and also of the officer or the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto . . . . [A]nd *no such contract shall be altered except* by a written agreement of the contractor . . . and the officer, department or board as the case may be, making the contract, with the approval of the mayor under Plan A . . . affixed thereto . . . (emphasis supplied). (It was agreed at the argument that Springfield has a Plan A form of city government. See *Kaczmarski* v. *Mayor of Springfield*, 346 Mass. 432, 432-433 [1963]). The cognate provisions of the Boston charter are found in St. 1890, c. 418, § 6, the first sentence of which has been amended most recently by St. 1955, c. 60, § 1, and the second sentence of which has been amended most recently by St. 1939, c. 156, § 2. See *Potter & McArthur, Inc.* v. *Boston*, ante 454, 459 n.4 (1983). Because of the substantial identity between the Boston provisions and those of G. L. c. 43, § 29, we shall cite cases decided under the former interchangeably with those decided under the latter.

[2] None of those contracts was signed by the city's director of public works, who, under the provisions of various city ordinances, was responsible for the operation of the sanitary landfill and would appear to have been the "head of the department" within the meaning of G. L. c. 43, § 29. We join the parties in passing the question whether the contracts should also have been signed or approved in writing by the director. But

from October 15, 1973, through September 14, 1974, and from January 1, 1975, through December 31, 1975. Each contract contained a provision which allowed the city to extend the contract for a further interval of equal duration.[3] During the intervals in the aforementioned period which were not covered by any of the four contracts the parties operated either without any pretense of a written contract or under letters to the plaintiff which were signed by the purchasing agent (or the assistant purchasing agent) by which he purported to exercise the city's right to extend the life of the immediately preceding contract. None of those letters was signed by or otherwise bore the written approval of the mayor. (He seems to have been unaware of at least one of the purported extensions.) The city paid the plaintiff more than $2,000 for the use of the equipment during each of those intervals.

The judge ruled that the extensions of the lives of the contracts, having been provided for in the writings which had been signed by the mayor, did not fall within the ambit of G. L. c. 43, § 29. We find error in this respect.

The cases decided under § 29 and its Boston counterpart (see n.1 hereof) are explicit that those statutes are ones of broad general application *(Adalian Bros.* v. *Boston,* 323 Mass. 629, 631 [1949]) and that the requirement of mayoral approval is not something which can be sloughed off as a

---

see *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 234-235 (1941); *School Comm. of Gloucester* v. *Gloucester,* 324 Mass. 209, 218 (1949); *Quincy* v. *Brooks-Skinner, Inc.* 325 Mass. 406, 412 (1950); *Dos Santos* v. *Peabody,* 327 Mass. 519, 520-522 (1951); *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 712-714 (1953); *Commonwealth* v. *Hayes,* 372 Mass. 505, 512 (1977).

[3] On its face, one of the contracts (the fourth mentioned in the text) contained language looking toward a renewal as well as an extension, and the parties have dissipated their efforts to some extent by arguing distinctions between an extension and a renewal of a lease under the law of landlord and tenant. See, e.g., *Ingram* v. *Sonitrol Security Syss. of Worcester, Inc.,* 11 Mass. App. Ct. 754, 756-757 (1981), and cases cited. In the view we take of this case, it makes no difference whether the contracts between the parties provided for extensions or for renewals.

mere ministerial act. *Singarella* v. *Boston*, 342 Mass. 385, 388 (1961). *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 697 (1977). It has been stated repeatedly that the purposes of a statute such as § 29 are to unify control over a city's commercial transactions, prevent waste, and bring the mayor's best independent judgment to bear on the advisability of his city's entering into all the contracts which fall within the ambit of the statute and are proposed by all the city's various departments, boards and commissions. *Eastern Mass. St. Ry.* v. *Mayor of Fall River*, 308 Mass. 232, 235, 238 (1941). *Singarella* v. *Boston*, 342 Mass. at 388-389. *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. at 697. *Boston Gas Co.* v. *Boston*, 13 Mass. App. Ct. 408, 415 (1982).

Although a purchasing agent may be able to curb or prevent waste in the actual purchasing process, he is in no position to curb or prevent the type of waste which flows from purchases which should never be made or to achieve any of the other purposes of the statute. It must be conceded that an option in a city to extend the life of a contract may be a useful device in controlling the effects of inflation, but the particular vendor's past performance, the availability of other qualified vendors and other factors may be such that it would be contrary to a city's best interests to extend or renew a contract on the same or any other terms. We think the question whether the extension or renewal of a contract such as those in this case would be in the best interests of a city calls for an exercise of judgment which the Legislature committed to the mayor, not to a purchasing agent. When all is said and done, it cannot be denied that the practical effect on a city of prolonging the term of a contract will be the same, whether the city exercises an existing option to prolong the term or enters into an express written alteration of the term, a course which would clearly require the written approval of the mayor under G. L. c. 43, § 29 (see note 1, *supra*). *Potter & McArthur, Inc.* v. *Boston*, *ante* 454, 458-459 (1983).

Accordingly, we conclude that the purchasing agent's actions in purporting to extend the lives of the four contracts

in question without the written approval of the mayor left the city in the position that "no . . . contract . . . [was] made or executed" within the meaning of § 29.

2. That being so, the city could have defeated any action by the plaintiff to recover damages arising out of a breach of any of the supposed contracts during any of the purported extensions thereof, as well as any action based on any theory of a contract implied in law. *Adalian Bros.* v. *Boston*, 323 Mass. at 632. *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. at 696. *Massachusetts Gen. Hosp.* v. *Revere*, 385 Mass. 772, 776, cert. granted, 103 Sup. Ct. 48 (1982). *Potter & McArthur, Inc.* v. *Boston*, *supra* at 459-460. In the present case, the city invokes the corollary of that rule by seeking the recovery of monies unlawfully paid out of the public treasury during the intervals of the purported extensions of the four contracts, as well as monies paid out during intervals when there was no pretense of a written contract. The judge temporarily blocked the city's path by ruling that those monies could not be recovered because they had been paid voluntarily under a claim of right with full knowledge of all the relevant facts.[4] See, e.g., *Carey* v. *Fitzpatrick*, 301 Mass. 525, 527 (1938); *Hinckley* v. *Barnstable*, 311 Mass. 600, 604-605 (1942).

Whatever may be the application of such a rule to voluntary payments made by private individuals, no such rule has ever been a bar to an action by the Commonwealth or one of its political subdivisions to recover public monies unlawfully paid to a private party. *Commonwealth* v. *Haupt*, 10 Allen 38, 42-43, 45, 47 (1865). *County of Norfolk* v. *Cook*, 211 Mass. 390, 392-393 (1912). *Attorney Gen.* v. *Trustees of Boston Elev. Ry.*, 319 Mass. 642, 666-667 (1946). *Dunne* v. *Fall River*, 328 Mass. 332, 336 (1952). *New Bedford* v. *Lloyd Inv. Associates*, 363 Mass. 112, 116-119 (1973).[5] Com-

---

[4] The judge and the master had a running battle over this point which ended with the judge's rejecting most of the master's recommendations and supplanting all his ultimate findings of fact and conclusions of law with ones of the judge's choosing.

[5] There is nothing to the contrary in *Selectmen of Hull* v. *County Commrs. of Plymouth*, 12 Mass. App. Ct. 900 (1981).

pare *United States* v. *Burchard,* 125 U.S. 176, 180 (1888); *Wisconsin Cent. Ry.* v. *United States,* 164 U.S. 190, 205, 208-209, 210-212 (1896); *United States* v. *Wurts,* 303 U.S. 414, 415-416 (1938); *Heidt* v. *United States,* 56 F.2d 559, 560 (5th Cir. 1932); *J. W. Bateson Co.* v. *United States,* 308 F.2d 510, 514-515 (5th Cir. 1962); Restatement of Restitution § 46(a) (1936); 3 Corbin, Contracts § 617, at 758 (1960); 13 Williston, Contracts § 1590 (3d ed. 1970). Contrast 10 McQuillin, Municipal Corporations § 29.132 (3d ed. rev. 1981).

The ruling that the city could not recover the amounts paid to the plaintiff under the purported extensions of the four contracts was error. The same is true with respect to the monies paid out during the intervals when there was no pretense of a written contract.

3. The judge assessed substantial damages against the city for its alleged failures to perform what he regarded as its contractual undertakings to maintain the plaintiff's equipment, as well as for the loss sustained by the plaintiff when one of the pieces of its equipment was accidently destroyed by fire. The fire occurred in December of 1975, during the stated term of the fourth contract signed by the mayor. The record is opaque as to when the alleged failures to maintain the equipment occurred, although it appears with reasonable certainty that they all occurred some time between the stated expiration date of the third contract which bore the mayor's approval (September 14, 1974) and the date when the plaintiff finally removed its equipment from the landfill (March 31, 1977). The result of the holding in part 1 of this opinion is that the plaintiff is necessarily forced to ground both claims now under consideration on some provision for the maintenance of the equipment which formed a part of the fourth contract approved by the mayor, the one which was in effect during the calendar year 1975.

There is a difficulty with respect to these claims which has escaped both parties. The only provision for maintenance which might have formed a part of the fourth con-

tract was set out in what the master described as the "particular specifications." His findings are clear that, through clerical error, those specifications were not attached to the contract documents which were submitted to the mayor for his approval under G. L. c. 43, § 29. The mayor "signed the incomplete document in good faith, unaware of the omission." When the omission was discovered, the plaintiff and the purchasing agent attached copies of the particular specifications to their respective copies of the contract, but the contract "was not re-executed after the discovery of the omission."

The judge concluded that the "maintenance provision was part of the agreement since that was the intention of the parties." What that intention might have been was irrelevant if there was no compliance with the requirements of § 29. There is nothing in the master's subsidiary findings which would warrant an inference that the mayor was ever aware of or intended to approve the maintenance provision relied on by the plaintiff. We think there can be no approval for the purposes of § 29 of a provision never presented or disclosed to the one person whose signature is a sine qua non. See *Singarella* v. *Boston*, 342 Mass. at 388.

It follows that it was error to hold the city responsible for breaches of a supposed agreement to maintain the equipment, or for any other damages based on the provision relied on by the plaintiff. As all the losses occurred prior to the August 16, 1977, effective date of the present G. L. c. 258, there can be no recovery on any theory of negligence. *Proffit* v. *Commonwealth*, 385 Mass. 781, 782 (1982).

The amended judgment is reversed, and the case is to stand for further proceedings in the Superior Court not inconsistent with this opinion.

*So ordered.*