PARK DRIVE TOWING, INC. *vs.* CITY OF REVERE & others.[1]

No. 02-P-433.

Suffolk. September 9, 2003. - December 16, 2003.

Present: GREENBERG, KAFKER, & COHEN, JJ.

Further appellate review granted, 441 Mass. 1103 (2004).

*Municipal Corporations,* Contracts. *Contract,* Municipality, Validity.

This court concluded that in the absence of a written contract between the plaintiff motor vehicle towing business and the defendant city to remove illegally parked motor vehicles and to perform other towing services at the behest of the city's police department, the city's refusal to restore the plaintiff to the city's tow list constituted neither a breach of contract nor an unfair or deceptive act under G. L. c. 93A, § 11. [175-178]

CIVIL ACTION commenced in the Superior Court Department on November 27, 1998.

A motion for partial summary judgment was heard by *Vieri Volterra,* J., and the case was heard by *Robert H. Bohn, Jr.,* J., on a motion for summary judgment.

*Bruce T. Macdonald* for the plaintiff.

*Ira H. Zaleznik* for James Russo & another.

*Austin M. Joyce* for Roy Colannino.

GREENBERG, J. In 1996, two brothers, John and Michael Lentz, along with Dante Spadoni, purchased Park Drive Towing, Inc. (Park Drive), from Arthur Norris. Park Drive conducted a motor vehicle towing business in the city of Revere (city), removing illegally parked motor vehicles and performing other towing services at the behest of the city's police department. A portion of the Park Drive purchase and sale agreement contained the following provision:

"The Seller presently has a contract with the City of

---

[1]James Russo, individually and in his former capacity as chief of police of Revere, and Roy Colannino, in his capacity as acting chief of police of Revere.

Revere to tow for the City of Revere. The Seller represents that this contract is due to expire and a new contract entered into. The Seller, as part of this agreement will secure the approval of the City of Revere for the Buyer to either enter into the new contract or to receive an assignment of the old contract, depending on when the contract is executed and when this agreement closes."

The question put is whether, in the absence of a written contract between Park Drive and the city, liability may be imposed.

We cull salient facts from the summary judgment materials submitted to Superior Court judges who ruled in favor of the defendants.[2] In the fall of 1996, there was a meeting arranged by the seller, Norris. Present were Norris and the three buyers and, from the city police department, Chief James Russo, Captain Roy Colannino, and Sergeant James Griffen. Evidently, the purpose of the meeting was to ensure that Park Drive (the stock and assets of which were being sold to the buyers) would remain on the city's tow list[3] subsequent to the change in ownership. The parties reviewed the purchase and sale agreement, which was not signed by any municipal official. The buyers relied on Norris's word and that of the police chief that the city would consider them successors to the contract Norris claimed to have with the city.

Transfer of the stock of Park Drive to the three buyers took place in due course. From September, 1996, to October, 1998, it was business as usual. Park Drive generated about $150,000 annually from towing private vehicles tagged by the police. Motorists paid the tow charges directly to Park Drive. Then, in the fall of 1998, a falling out occurred between the Lentz brothers and Spadoni. Spadoni accused the brothers of insurance fraud, and criminal charges were filed against them. As a result, the city suspended Park Drive from the tow list while the criminal cases were pending. Without the revenue earned from the city's

---

[2]The defendants filed two separate motions for summary judgment. The motions were allowed by two different Superior Court judges, and separate judgments entered, the first dismissing the complaint as to Colannino, and the second dismissing the complaint as to Russo and the city.

[3]The city's tow list contained the names of three companies that performed all police-ordered towing.

referrals, Park Drive defaulted on its purchase money note to Norris. In November, 1998, Norris repossessed all of the tow trucks. In February, 1999, the criminal charges against Michael Lentz were dropped, and John Lentz was acquitted of all charges by a jury. However, fate conspired against them: creditors forced Park Drive to seek Chapter 11 bankruptcy protection, and with only one tow truck (acquired after the others had been repossessed), it was impossible for Park Drive to meet the city's needs. Meanwhile, the defendant James Russo retired as police chief, and the defendant Roy Colannino became acting police chief in March, 1999. He assumed that Park Drive was still under suspension and chose another company to replace Park Drive on the tow list.

*Analysis.* Park Drive asserted in its complaint that once the Lentz brothers were cleared of criminal charges, Colannino's refusal to restore Park Drive to the city's tow list constituted a breach of contract and an unfair and deceptive act under G. L. c. 93A, § 11. Two judges of the Superior Court disagreed, and with a bow to G. L. c. 43, § 29, they separately ruled in the defendants' favor on the defendants' motions for summary judgment and dismissed Park Drive's complaint in its entirety.

The portion of G. L. c. 43, § 29, as amended through St. 1989, c. 687, § 18, on which the city especially relies is the first sentence of the initial paragraph, which provides: "All contracts made by any department, board, or commission where the amount involved is five thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor . . . and also of the officer or the head of the department . . . making the contract is affixed thereto." Park Drive argues that the sweep of that sentence, however, is cast in doubt because § 29 applies only to municipal contracts that involve an expenditure of municipal funds. Here, Park Drive argues, the only money that changed hands between it and the city was a $15 administrative fee paid by Park Drive to the city for each towed vehicle. Thus, Park Drive concludes that G. L. c. 43, § 29, is not applicable.

The case is governed in most material respects by *Central Tow Co.* v. *Boston*, 371 Mass. 341 (1976). In that case, a towing contractor sued the city of Boston for accumulated storage

charges on vehicles that had been towed from city streets at the city's request. *Id.* at 342. Construing St. 1909, c. 486, § 30, as amended through St. 1955, c. 60, § 2, a city of Boston statute analogous to § 29, see *Lumarose Equip. Corp.* v. *Springfield*, 15 Mass. App. Ct. 517, 518 n.1 (1983), the Supreme Judicial Court held that the city was not liable for any such storage charges. The court emphasized the master's finding that "[n]o express conversation or communication ever occurred between City of Boston officials and plaintiff regarding payment for towing and storage of motor vehicles." *Central Tow Co.* v. *Boston*, *supra* at 343. The court concluded that if the contract for storage charges might exceed the city's $2,000 statutory cap, to be enforceable it would require written approval by a city official and other formalities also required by the statute. *Id.* at 344. Lacking that proof, the towing contractor's contract claim failed. *Id.* at 344-345.

The burden is on Park Drive, as appellant, to demonstrate error. In opposition to the defendants' motions for summary judgment, Park Drive furnished to the motion judges portions of John Lentz's deposition testimony in which he indicated his understanding that there "was pending the agreement between the [c]ity . . . and Park Drive . . . , [and] according to the prior owner, that there was an ongoing agreement, and that upon sale to us, that it would continue." However, Norris, the prior owner, was more ambiguous on the point. In his deposition testimony, he referred in vague terms to a written agreement that had been extended, but he indicated that it could be terminated at any time by the city.

We are handicapped, and so far as appears from the record appendix, so were the motion judges, by not having been furnished with a copy of the contract between Norris and the city, if such a contract existed, and that is a deficiency that cuts against Park Drive.[4] As we have observed in other cases, once the moving party's materials in support of summary judgment

---

[4]Although Park Drive contends that dismissal of its complaint was erroneous because the complaint implicitly stated a claim that the city breached a contract with it, that bare allegation does not suffice. If Norris did secure the city's written approval of Spadoni and the Lentzes to succeed him, as contemplated by the purchase and sale agreement, that written assent does not appear in the summary judgment materials. Under Massachusetts third-party

develop a picture of no genuine issue of material fact, it becomes the task of the nonmoving party, here Park Drive, to contradict the picture so formed. See *Matsushita Elec. Industrial Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 585, 587 (1986). See also *Urban Transport, Inc.* v. *Mayor of Boston*, 373 Mass. 693, 696-697 (1977) (the party seeking to contract with the city bears the burden of proving compliance with the statutory requirements).[5]

In sum, from the language of the first paragraph of G. L. c. 43, § 29, as well as its legislative history and its context, it appears that the statute is one of "broad general application." *Lumarose Equip. Corp.* v. *Springfield*, 15 Mass. App. Ct. at 519 (construing § 29 and analogous Boston statute). More specifically, the statute serves as a prophylactic against no-bid contracts or other "sweetheart" deals. It also protects cities "from the uncertainty and danger of oral contracts involving large amounts, and from hasty and ill-advised action. A contract in writing . . . relieve[s] the city from the dangers attendant upon contracts, the scope and effect of which might depend wholly upon verbal talk, subject to different interpretations in view of the language used by the parties." *McGovern* v. *Boston*, 229 Mass. 394, 397 (1918).

Park Drive, having failed to establish any enforceable contract

---

beneficiary law, "[i]t must appear from 'the language and circumstances of the contract' that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiaries to benefit from the promised performance." *Miller* v. *Mooney*, 431 Mass. 57, 62 (2000), quoting from *Anderson* v. *Fox Hill Village Home-owners Corp.*, 424 Mass. 365, 366-367 (1997).

[5]Contrary to Park Drive's alternative argument, we conclude that no implied-in-fact contract can arise between it and the city. While it is true that our decisions have long recognized that the conduct and relations of the parties can establish an implied contract, see *Hobbs* v. *Massasoit Whip Co.*, 158 Mass. 194 (1893); *LiDonni, Inc.* v. *Hart*, 355 Mass. 580, 583 (1969), the aggrieved party must show that the other party has been unjustly enriched. See *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985). The measure of damages in these circumstances is quantum meruit, the reasonable value of the benefit conferred on the unjustly enriched party. See *id.*; *Anisgard* v. *Bray*, 11 Mass. App. Ct. 726, 731 (1981). Here, Park Drive alleges breach of contract, but not unjust enrichment. As pointed out earlier in our opinion, Park Drive's rights against the city must arise out of an express contract. This is also not a quantum meruit case. While it is true that potential profits were lost when Colannino refused to restore Park Drive to the authorized tow list, no benefit was conferred on the city.

with the city, cannot claim, as it does in its brief, that the city's failure to place it on the approved tow list constitutes an unfair and deceptive trade price under G. L. c. 93A, § 11. From the record, it is also evident that the city was not conducting a commercial or proprietary function, but was exercising its police powers as a public entity. See *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. 509, 535-536 & n.29 (1998), cert. denied, 525 U.S. 1177 (1999). The Superior Court judges were correct in ruling that no binding enforceable contractual arrangement existed at the time Colannino refused to restore Park Drive to the tow list.

*Judgments affirmed.*