ALICE G. GIBNEY vs. MAYOR OF FALL RIVER & others.

Bristol.   May 9, 1940. — September 11, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Health, Board of. Civil Service. Municipal Corporations,* Officers and agents.

The power of appointing and removing a board of health nurse in a city operating under a Plan A form of government was in that board, subject to the requirements of the civil service law but not to the control of the mayor.

A board of health acted within its powers in removing, within the probationary period fixed by Civil Service Rule 18 (1), one appointed permanently as board of health nurse and in denying her a hearing; a reason it assigned for the removal was immaterial.

PETITION, filed in the Supreme Judicial Court for the county of Bristol on July 5, 1939, and afterwards amended, for a writ of mandamus.

The case was heard by *Cox,* J.

*G. L. Sisson,* Corporation Counsel, for the respondents.

*J. E. Lajoie,* for the petitioner.

DOLAN, J.   This is a petition for a writ of mandamus wherein the petitioner seeks reinstatement to the position of nurse in the department of health of the city of Fall River from which she was removed on June 19, 1939, and for further relief.   The case was heard upon the report of an auditor by a single justice of this court who found the facts to be as stated in the report and ordered that the writ "issue commanding the officials of the city named in the petition to recognize the petitioner as board of health nurse by virtue of her appointment to said position on December 22, 1938, to the same extent and fully with respect to her rights of compensation and the necessary means by which her compensation is to be secured and paid to her as if the attempted removal of her on June 19, 1939, from said position had never taken place"; and further commanding "the respondent Larkin to strike from the

records of the board of health of the meeting of December 22, 1938, that part of the vote appointing the petitioner permanently as board of health nurse which reads as follows: 'if the mayor approves,' and further to expunge from the records of said board the alleged vote of June 19, 1939, wherein the alleged action of the board in removing the petitioner from her position is recorded." The case comes before us on the respondents' claim of exceptions "to the findings and order" of the single justice.

The material facts found by the auditor follow. The city of Fall River is organized under Plan A as set forth in G. L. (Ter. Ed.) c. 43, §§ 46–55, inclusive. The petitioner was employed in its department of health as a substitute nurse from July, 1937, until December 22, 1938. On October 26, 1938, however, the board of health, hereinafter referred to as the board, was notified by the department of civil service that an eligible list had been established for appointment to the position of "board of health nurse" and that the petitioner's provisional appointment was terminated. At the request of the board the list was furnished. The petitioner was second on the list of three persons whose names were certified. The first person on the list had a rating of "91.50." The petitioner had "a mark of 91.28." Subsequently, on appeal of the petitioner, her mark, because of experience, was increased to "94.5," thus making her first on the list. The department of civil service notified the board of this change in rating on May 13, 1939.

Prior to this change, the board at a meeting held on December 22, 1938, passed a vote which so far as material was recorded as follows: "Voted that Mrs. Alice G. Gibney be appointed permanently as board of health nurse, if the mayor approves." The auditor found, however, on evidence objected to by the respondents, that the words "if the mayor approves" were not contained in the vote as actually passed on December 22, 1938, but that the record of the vote submitted for the approval of the board on January 5, 1939, did contain the words "if the mayor approves." The mayor never approved the appointment.

On December 22, 1938, the board consisted of six mem-

bers. The ordinance provided for seven members, but one Friar had ceased to be a member prior to December 22, 1938. In accordance with the provisions of the ordinance, three members of the board were physicians. It was admitted that one of these physicians was a *de facto* member of the board, never having "been sworn." The delay in appointing the petitioner after she was certified was due to the then pending campaign for election of mayor and other city officers, in which the respondent mayor was actively engaged, and was in deference to his desire that the appointment be postponed until the coming in of the new city administration.

On December 23, 1938, the day following the appointment of the petitioner, the board held a meeting at which the mayor appeared and expressed his disapproval of the action of the board in appointing the petitioner and his purpose not to approve any warrant for payment of salary to her while she was carried under the designation of "permanent board of health nurse." The board met again on February 17, 1939. Its membership was the same as at the meeting of December 22, 1938, except that one of the physician members had resigned. The mayor came into the meeting and "stated his position that the first on the list certified by the civil service department should be appointed to the position and asked how many members of the board would support that policy." Two members said they would. A motion that the board rescind its vote of December 22, 1938, appointing the petitioner, was lost, two members voting in the affirmative and three in the negative. The mayor removed these three the next day for "failure of said members to adhere to the policy of giving all appointments in the city departments made from certified civil service lists to the first person named on the list . . . [deeming] such failure [to be] detrimental to the best interests of the city."

On March 6, 1939, the mayor appointed five persons as members of the board to fill the places of those removed and preëxisting vacancies. They duly qualified. Three of them were physicians. It appearing to the mayor that

these appointees would not adopt his policy in the matter of the appointment of the petitioner, he removed them on May 27, 1939, assigning as reason therefor "lack of coöperation existing in this board."

On May 13, 1939, the department of civil service had made known to the board that so far as the department was concerned the petitioner had been legally appointed in compliance with the civil service law and rules. The mayor knew of this action of the department of civil service.

On June 9, 1939, the mayor notified the health commissioner that he would refuse to approve any salary for the petitioner beyond June 10, 1939. As a result of this action her name was stricken from the payrolls. She has reported for work every day since that time. In so far "as the city payroll and the execution of warrants for payment of her salary are concerned she . . . [was] carried under the designation" of substitute nurse up to June 10, 1939.

On June 19, 1939, the mayor appointed two persons as members of the board. As a result the board was then composed of four members, none of whom was a physician. On the same day the board voted to remove the petitioner by a vote setting forth that the board accepted the opinion of the corporation counsel that she had not been legally appointed. The vote provided that she be immediately notified of this action of the board, and she was so notified. She requested a hearing "pursuant to G. L. (Ter. Ed.) c. 31," but a hearing was denied. Sufficient money had been appropriated for the year 1939 to cover the salary attached to the petitioner's position for the balance of that year.

The action of the board in removing the petitioner on June 19, 1939, "was procured . . . by the statements of the mayor to the board . . . as to his attitude and what he proposed to do if the board did not adopt and act upon his policy in the matter of the appointment in question, and by the successive removals from and appointments to the board . . . in accord with such statements. . . . [He] was not actuated by malice or ill-will against the petitioner, nor by any personal feeling towards her, nor by any spirit

of favoritism, nor by any political motive, but by the feeling that in all cases the first on the civil service list should be appointed and that he had a right to impose that theory . . . on the board . . . irrespective of whatever other theory of appointment might be held by the board members." The acts of the mayor were assumed to be done by him "in his supervisory capacity as chief executive of the city, in the belief that he was not exceeding his authority." By his policies and acts he "imposed such pressure on the board . . . to compel the board to conform to his theory of appointments as to impair its functions and powers as an independent board and substitute his judgment and will for the judgment and will of the board . . . ."

Since the result will be the same, we assume in favor of the petitioner, without deciding, that the board which appointed her and that which removed her were at the respective times of her appointment and removal legally qualified to function as the board of health of the city. (See, however, G. L. [Ter. Ed.] c. 111, § 26; c. 43, § 5; *Furlong* v. *Ayers*, 305 Mass. 455, 458.)

By G. L. (Ter. Ed.) c. 111, § 27, the board of health of a municipality may employ the necessary officers, agents and assistants to execute the health laws and its regulations and fix the salary or other compensation of such agents and assistants. It is settled that "While the word 'may' is used in § 27 . . . the power therein conferred, although leaving much to the board's discretion, is one which is vested exclusively in the board and is to be exercised without reference to the approval or disapproval of" a town or a mayor. *Breault* v. *Auburn*, 303 Mass. 424, 428, and cases cited. "A municipality can exercise no direction or control over one whose duties have been defined by the Legislature." *Daddario* v. *Pittsfield*, 301 Mass. 552, 558, and cases cited.

The pertinent ordinance of the city here concerned, in recognition of the powers conferred and duties imposed upon its board of health by legislative mandate (G. L. [Ter. Ed.] c. 111), provides that the board of health shall

have "the powers and duties of boards of health under general laws." The power of appointment and of removal of the petitioner was vested in the board alone, subject to the requirements of the civil service law. The mayor was without lawful power of direction or control in the matter.

But notwithstanding the influence and pressure brought to bear by the mayor upon the board in the matter of the removal of the petitioner, we are of opinion that the action of the board in removing her was valid. On the assumptions we have made in favor of the petitioner, the decisive fact is that she was removed by the body vested with the power of removal before the expiration of the six months' period of probationary service fixed by rule 18 (1) of the civil service rules under G. L. (Ter. Ed.) c. 31, § 3 (e). This rule provides that "No person appointed in the official or labor division shall be regarded as holding office or employment in the classified public service until he has served a probationary period of six months." It is settled by many decisions of this court that this is a valid rule having the force of law under the statute and that, during the period of probation established by it, an appointee or employee may be discharged without the notice and opportunity for hearing otherwise required by § 43. *Crimmins* v. *Highway Commission of Brockton,* 304 Mass. 161, 163, and cases cited. The reason assigned by the board in the vote removing the petitioner is immaterial. The board was not obliged to give any reason for its action. In its action the board violated no law.

In *Downey* v. *School Committee of Lowell,* 305 Mass. 329, at page 332, it is said that "Where no law has been violated, and no statute has made good faith essential to valid action, acts of administrative officers cannot be attacked in judicial proceedings on the ground that in fact those officers were not governed by the highest standards of impartial and unselfish performance of public duty." See also *Attorney General* v. *Secretary of the Commonwealth, ante,* 25, 48. The instant case is not one of the discharge of a faithful employee in violation of the rights secured to

her by statute. See *Williams* v. *New Bedford*, 303 Mass. 213, 216, and cases cited.

It follows that the exceptions of the respondents to the order of the single justice that the writ issue must be sustained. Accordingly, the order that the writ issue is reversed and an order is to be entered dismissing the petition.

*So ordered.*