VINCENT RUGGIERI vs. CITY OF SOMERVILLE & others.[1]

Middlesex.    April 10, 1980. — June 16, 1980.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil,* Motion to dismiss. *Due Process of Law,* Termination of
employment, Hearing, Notice. *Public Employment,* Termination.
*Comprehensive Employment Training Act.*

Where a defendant's motion to dismiss a complaint for lack of jurisdiction
over the subject matter raised constitutional questions under the su-
premacy clause of the United States Constitution, it was appropriate
to avoid the constitutional issue and to pass on the defendant's alter-
native motion to dismiss for failure to state a claim under Mass.R.
Civ.P. 12(b)(6). [44]

An employee hired under a Comprehensive Employment Training Act
program operated by a city was not entitled to notice or a hearing
before discharge. [45-46]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 11, 1979.

A motion to dismiss was heard by *Vallely,* J.

*Sharon Livesey (Stephen J. Kehoe* with her) for the plain-
tiff.

*Henry P. Sorett,* Special Assistant City Solicitor, for the
defendants.

KASS, J.   From October 1974, to February 22, 1975, the
plaintiff Vincent Ruggieri was employed as a parking lot
security guard under a Comprehensive Employment Train-
ing Act (CETA)[2] program operated by Somerville as a trus-

---

[1] Thomas F. August, as he is the mayor of Somerville, Sharon Fiskly, an
official of the Somerville CETA program, Peter Boiages, building super-
intendent of Somerville, and William Fascianno, principal of Somerville
High School.

[2] 29 U.S.C. §§ 801-986 (1970).

tee for the United States Department of Labor. Discharged on the latter date, Ruggieri complained that he received no notice of either the reasons for the termination of his employment, or of his right to a hearing.

A motion to dismiss the complaint was brought for want of jurisdiction over the subject matter under Mass.R.Civ.P. 12(b)(1), 365 Mass. 755 (1974), and for failure to state a claim for which relief can be granted under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). The motion to dismiss was allowed for failure to state a claim.

Generally, a court ought to dispose of jurisdictional issues "before dealing with questions, such as rule (12)(b)(6) motions, that go to the merits of the case." *Attorney Gen.* v. *Industrial Natl. Bank*, 380 Mass. 533, 534 (1980). This principle rests not only on logic, i.e. jurisdiction is a preliminary question, but has functional significance because a dismissal based on the merits has a judgment preclusion effect that a dismissal for want of jurisdiction does not have. *Arrowsmith* v. *United Press Intl.*, 320 F.2d 219, 221 (2d Cir. 1963). See 5 Wright & Miller, Federal Practice and Procedure § 1351, at 563 n.21 (1969).

In the instant case, however, the jurisdictional issue raised by the defendants raises constitutional questions under the supremacy clause of the Constitution of the United States (art. 6, cl. 2) of congressional preemption of the field and federalism. See e.g., *Kargman* v. *Sullivan*, 552 F.2d 2, 10-14 (1st Cir. 1977). We are confronted, therefore, with the countervailing principle that we should avoid deciding constitutional issues where there are other grounds for decision. *Ashwander* v. *TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). *Commonwealth* v. *Bartlett*, 374 Mass. 744, 749 (1978). *Fazio* v. *Fazio*, 375 Mass. 394, 405 (1978). Since, even upon cursory examination, the plaintiff's case is barred by a well established line of decisions, we think it is appropriate to honor the inhibition concerning constitutional questions and to pass on to the merits of the rule 12(b)(6) motion, which we think was rightly allowed.

Public employees who do not possess tenure or civil service status do not have a right to notice or a hearing before discharge. *Arnett* v. *Kennedy*, 416 U.S. 134, 152 (1974). *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 760 n.3 (1976), and cases cited. *Nawn* v. *Selectmen of Tewksbury*, 4 Mass. App. Ct. 715, 718 (1976). An exception to this general rule exists when the termination of employment is accompanied by public pronouncements or other circumstances which damage a person's standing and associations in the community or which are likely to foreclose employment opportunities. *Grant* v. *Police Commr. of Boston*, 7 Mass. App. Ct. 296, 298-299 (1979). When these interests have been violated, a nonpermanent municipal employee is entitled to a hearing for the sole and limited purpose of clearing his name and restoring his reputation. *Id.* To trigger this due process protection, there must be a creation of false information by the employer and a dissemination of that information. *Id.* at 299. So far as appears from the record, no allegation of any sort was made by Ruggieri's employer in connection with his discharge; his employment ended without comment and could as well have been connected with changed needs of the employer as with any shortcoming on Ruggieri's part. See *Bishop* v. *Wood*, 426 U.S. 341, 348-349 (1976). We do not imply, in any event, that a discharge based expressly on poor job performance carries with it the obloquy which entitles an employee to a hearing. More must be shown than mere allegations of incompetence or inefficiency at a particular job. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. at 761, and cases there cited.

Ruggieri fares no better under the provisions of G. L. c. 31, the Civil Service Act, because St. 1974, c. 828, § 1, provides that a temporary CETA job "shall not be subject to the provisions of said chapter thirty-one." Thus, a CETA employee working in a program operated by a municipality has the status of a probationary or nontenured municipal employee, who may be discharged without reason, notice or hearing. *Johnson* v. *Mayor of New Bedford*, 303 Mass. 381, 382 (1939). *Gibney* v. *Mayor of Fall River*, 306 Mass. 561,

566 (1940). *Costa* v. *Selectmen of Billerica*, 377 Mass. 853, 857 n.6 (1979). See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. at 760 & n.2.

Finally, Federal statutes and regulations in effect at the time of Ruggieri's discharge did not establish a hearing requirement. The legislation establishing the CETA program (see note 2, *supra*) affords to CETA employees workmen's compensation, health insurance, unemployment insurance, and other benefits at the same levels, and to the same extent as other employees of the employer, 29 U.S.C. § 848(a) (4) (1970),[3] and provides that participants be notified before employment of their rights and benefits in connection with CETA employment, but leaves to regulation "personal standards, evaluation procedures, and other policies as may be necessary to promote the effective use of funds." *Id.* § 848(a) (8) and (d) (1970). See *id.* § 982(a); *Maloney* v. *Sheehan*, 453 F. Supp. 1131, 1138 (D. Conn. 1978). After the date of Ruggieri's discharge the Secretary of Labor by regulation established procedures under which an aggrieved party would be entitled to an informal hearing with the "prime sponsor." 29 C.F.R. § 98.26 (1979). See also *id.* § 98.46.[4]

*Judgment affirmed.*

---

[3] The provisions of § 848 were reclassified by Pub. L. 95-524 (enacted in 1978) and now appear in 29 U.S.C. § 824 (Supp. II 1978). That 1978 legislation also introduced a grievance procedure into the statutory scheme. See 29 U.S.C. § 816(a) (Supp. II 1978).

[4] The prime sponsor in this case is a consortium of Arlington, Belmont, Cambridge, Somerville and Watertown called the Eastern Middlesex Human Resources Development Authority.