DIANA F. OSSINGER vs. CITY OF NEWTON & another.[1]

No. 87-1194.

Middlesex. October 19, 1988. — January 30, 1989.

Present: PERRETTA, KAPLAN, & FINE, JJ.

*Municipal Corporations*, Officers and employees, Mayor, Contracts. *Contract*, With municipality, Employment. *Public Employment*, Termination. *Due Process of Law*, Termination of employment. *Civil Rights*, Termination of employment. *Practice, Civil*, New trial.

The claims of a former municipal employee alleging the municipality's liability on theories of contract and due process for her discharge by the mayor from her at-will employment were properly dismissed for failure to state a claim upon which relief could be granted [833-835]; and summary judgment was properly entered for the defendant mayor on claims based on the same facts and theories. [835]

The judge at a civil trial properly directed a verdict for the defendant where the plaintiff, seeking damages for her allegedly wrongful termination from at-will employment, did not offer any evidence demonstrating the defendant's bad faith in dismissing her. [836-837]

A plaintiff's motion for a new trial of a civil action, based on an allegedly improper jury instruction, was correctly denied. [837]

CIVIL ACTION commenced in the Superior Court Department on June 11, 1981.

Motions to dismiss and for summary judgment were heard by *Paul K. Connolly*, J., and *J. Harold Flannery*, J., respectively. The case was tried before *James L. Vallely*, J., and a motion for a new trial was heard by him.

*Regina L. Quinlan* for the plaintiff.

*Michele K. Russell-Einhorn*, Assistant City Solicitor (*Daniel M. Funk*, City Solicitor, with her) for the city of Newton.

*Edward J. Barshak (Michael S. Appel* with him) for Theodore D. Mann, as mayor of Newton and individually.

---

[1] Theodore D. Mann, as mayor of Newton and individually.

KAPLAN, J. From March, 1972, until her dismissal in March, 1980, the plaintiff was employed by the defendant city of Newton in the position of executive secretary to the defendant, Theodore D. Mann, mayor of Newton, a position which, according to G. L. c. 43, § 25, G. L. c. 31, § 48, and § 11-2 of the Newton charter,[2] was at will (non-civil service). In late January, 1980, Mann became apprehensive that various of his paychecks had been diverted and not deposited to his account. Investigation by the Newton police indicated that Ossinger was the guilty person, and on March 7 the police department filed larceny charges in forty-four counts against her. On the same day, Mann dismissed Ossinger as executive secretary. Ossinger was convicted at a bench trial in District Court. Upon subsequent de novo jury trial, she was acquitted. Thereafter, on June 11, 1981, Ossinger filed the present action against the city of Newton and Mann, as mayor. In the last phase of the action, two claims were asserted against Mann for acts in his personal capacity.

Both defendants moved to dismiss the first amended complaint for failure to state a claim, Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Newton's motion was allowed. After answering and conducting some discovery, Mann moved for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 824 (1974), and his motion was allowed. Judgment was withheld, however, to permit the assertion of the final two claims above mentioned. Those claims were alleged in a second amendment of the complaint. They were tried to a jury and failed.

Ossinger appeals from the judgment for Newton dismissing the first amended complaint; the summary judgment in favor of Mann; and the directed verdicts and resulting judgment on the final two claims. Ossinger further appeals from the denial of a new trial. We find no basis for faulting the actions of the judges below. We state our grounds in summary fashion.

---

[2] It will be enough to quote from G. L. c. 43, § 25: "The civil service laws shall not apply to the appointment of the mayor's secretaries or the stenographers, clerks, telephone operators and messengers connected with his office, and the mayor may remove such appointees without a hearing and without making a statement of the cause of their removal."

1. *Insufficiency of first amended complaint on Newton's motion.* This pleading in three counts may be taken to have asserted four theories of recovery against the city. Ossinger first counted on G. L. c. 268A, § 25, which allows the appointing authority of a city to suspend an officer or employee during the period he or she is under indictment for misconduct in office or employment. This theory is inapposite to the case and has been abandoned. Also abandoned, for the same reason, is a theory based on §§ 3-3, 3-4, and 3-5 of the charter of the city of Newton which deal with details of procedure in the removal of persons appointed by the mayor. Then, to overcome the fact of her status as an at-will employee, Ossinger alleged that the mayor, at the time of her entry into service, had officially promised her rights as a civil service employee including the right to protection against peremptory dismissal without hearing. But it is clear that such a promise, circumventing the very statutes defining the at-will status, would exceed the mayor's powers and provide no basis for recovery against the city. See *Nichols* v. *Commissioner of Pub. Welfare*, 311 Mass. 125, 128 (1942); *Sullivan* v. *School Comm. of Revere*, 348 Mass. 162, 164 (1964). See also *Urban Transport, Inc.* v. *Mayor of Boston*, 373 Mass. 693, 696-697 (1977); *Ungerer* v. *Smith*, 765 F.2d 264, 266-268 (1st Cir. 1985). See also note 7, *infra*.

For a fourth theory, Ossinger invoked the due process clause of the Fourteenth Amendment to the Federal Constitution as that may ground a claim under the venerable 42 U.S.C. § 1983 (1982), reading as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

Since *Monell* v. *Department of Social Services of the City of New York,* 436 U.S. 658, 663 (1978), the bar has been removed to suits against municipalities under § 1983. Then the case of *Pembaur* v. *Cincinnati,* 475 U.S. 469, 480 (1986), elaborated the proposition, recently reexamined in *St. Louis* v. *Praprotnik,* 485 U.S. 112, 123 (1988), that a single act (short of any continuous usage) by an official of policy making rank may be of such a character as to subject a municipality to liability under the statute. We need not consider whether the mayor of Newton is of the postulated rank in relation to employment matters, or whether his dismissal of Ossinger could conceivably serve as the single act rendering the city liable.[3]

We may overlook these questions because in no event is a due process violation shown. In the constitutional sense Ossinger did not have a "property"[4] interest in her employment, and her criminal trial provided an adequate procedure to vindicate her (occupational) "liberty."[5] On the score of property, Ossinger can make no headway because her employment was at will. See *Bishop* v. *Wood,* 426 U.S. 341, 344-347 (1976); *Ventetuolo* v. *Burke,* 596 F.2d 476, 480-481 (1st Cir. 1979); *Stetson* v. *Selectmen of Carlisle,* 369 Mass. 755, 759-760 (1976); *Ruggieri* v. *Somerville,* 10 Mass. App. Ct. 43, 45 (1980). As regards liberty, especially when seen against the background of an at-will employment, the hearing and dismis-

---

[3] Justice O'Connor, writing for a plurality of the Court in the *Praprotnik* case, at 126, describes one of the difficulties in the field thus: "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose. It may not be possible to draw an elegant line that will resolve this conundrum, but certain principles should provide useful guidance." See also a critique of the *Praprotnik* case at 102 Harv. L. Rev. 320 (1988); and·Annot., 81 A.L.R. Fed. 549, especially §§ 3 & 11 (1987).

[4] *Board of Regents* v. *Roth,* 408 U.S. 564, 576-578 (1972), is a starting point.

[5] Associated with *Paul* v. *Davis,* 424 U.S. 693, 701-710 (1976).

sal of the criminal charges cancelled the legal grievance even if they may not have extinguished every vestige of any actual hurt. See *Greene* v. *Finley,* 749 F.2d 467, 469-470 (7th Cir. 1984). Cf. *Greene* v. *McGuire,* 683 F.2d 32, 35 (2d Cir. 1982).

To revert to the property phase, Ossinger seeks to improve her case by pointing to a duty of a private employer under State common law, even in case of an employment at will, to exercise "good faith," or rather to eschew "bad faith," in ordering dismissal. The first amended complaint makes no such allegation regarding the dismissal. There is no decision, nor is there likely to be one, which engrafts a duty in that form upon statutory at-will governmental employments. The limits of the common law duty are described below; the subsequent trial did deal with a claimed breach of the duty by Mann in a personal capacity and the outcome was unfavorable to Ossinger; see note 10, *infra.*

2. *Insufficiency of the case on mayor's motion.* The judge, passing on the defendants' motions to dismiss for failure to state a claim, denied the mayor's motion while allowing the city's. A second judge allowed the mayor's motion for summary judgment. The papers offered in support of, and opposition to this motion filled in the background and circumstances of the firing of Ossinger, but there was nothing to alter materially the picture as pleaded in the first amended complaint.

We are dealing here with the actions of the defendant Mann as mayor, and the same considerations that applied in our point 1 apply here also. (This is to say that the first judge should have allowed the mayor's motion just as he allowed the city's.) We need not stop to consider whether the mayor, in respect to his acts as such, might claim an immunity from liability, if a claim against him were otherwise supported.[6]

---

[6] For immunity to attach the official's action must not have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 (1982). See also *Cheveras Pacheco* v. *Rivera Gonzalez,* 809 F.2d 125, 127 (1st Cir. 1987); *Breault* v. *Chairman of the Board of Fire Commrs. of Springfield,* 401 Mass. 26, 32 (1987). Cf. *Colaizzi* v. *Walker,* 812 F.2d 304, 308 (7th Cir. 1987).

3. *Trial of claims for alleged acts by Mann in personal capacity.* In his memorandum of decision allowing the mayor's motion for summary judgment, the judge, out of abundant caution, suggested that "among the inappropriate theories now pleaded may lurk a viable claim." Attempting to follow this oracular hint, Ossinger filed a second amendment of her complaint. The amendment seemingly charges that — although the city of Newton, not Mann, was Ossinger's employer and paid her salary and other benefits — Mann had obligated himself by an express contract with Ossinger to see to it that she would not be dismissed except for cause after hearing. The amendment also alleged that Mann had maliciously violated "the implied covenant of good faith and fair dealing in the plaintiff's employment contract with the defendant."

At the close of the plaintiff's case, the trial judge allowed Mann's motion for a directed verdict in respect to the claim based on express contract.[7] Ossinger does not contest this ruling.

Mann's motion for a directed verdict at the close of all the evidence was denied provisionally, in accordance with approved practice, to await the jury's verdict. When the jury reported themselves unable to reach a verdict, the judge gave the direction, concluding the trial.

Since Ossinger was employed by the city, it is not apparent how Mann could become obligated under an implied good faith covenant inhering in that employment relationship. Perhaps the pleader intended to allege an implied agreement (rather than an express contract) between Ossinger and Mann that Mann would dismiss her (if the occasion arose) only in the exercise of good faith.

In envisioning the nature of such a covenant or implied undertaking, one sees some analogy to *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977). But the duty toward an at-will employee there described is to refrain from a dismissal subverting public policy, as where it is in fact punishment

---

[7] Here offered as a personal commitment on the part of Mann was an alleged agreement consisting of an exchange of letters between Ossinger and Mann. The authenticity of these papers was challenged.

for the employee's refusal to commit a crime,[8] or a dismissal not justified by the merits but aimed guilefully at depriving the employee of an already earned reward.[9] The evidence was wide of any such mark. Another analogy is to a narrow cause of action that sometimes lies against a corporate officer who dismisses an at-will employee in circumstances amounting to an intentional interference with the employment relationship between the corporation and the employee. Liability there, however, turns on proof of "malice of an aggravated kind," amounting to "malevolence" or "spite or ill will." See *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. 915, 917 (1986). Far from approaching so mean a level, the evidence in the present case, apart from vague insinuations, was barren of proof of an invidious motive on Mann's part. Confronted by what appeared to be a solid demonstration of criminal conduct by Ossinger, Mann felt he must sever a connection that had been a close and valued one. His choice of terminating Ossinger rather than suspending her conceivably might be questioned on prudential grounds, but there was no showing of bad faith in any form. The judge did not err in making the direction.[10]

4. *New trial.* The judge, instructing the jury on the bad faith issue, said it was an irrelevancy, not to be considered by them, that Mann filed insurance claims to recoup his losses. Ossinger's objection was overruled. She contends the instruction was error justifying a new trial. Only by rank insinuation could any relevance be shown; the instruction was correct. Were it not so, the direction of the verdict was still right, and would control.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[8] See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 668 n.6 (1981); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 303, 306, 310 (1982).

[9] As in the *Fortune* case.

[10] As Ossinger failed on the fact issue in the claim against Mann in his personal capacity, she would be precluded on the like issue if it could arise in a claim against him in his official character.