Alan R. ZISKEND, Plaintiff,

v.

Daniel O'LEARY, Defendant.

No. Civ.A. 99–10810–WGY.

United States District Court,
D. Massachusetts.

Jan. 10, 2000.

Gordon W. Spencer, Boston, MA, for Plaintiff.

George F. Driscoll, Jr., Brookline, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The plaintiff Alan Ziskend ("Ziskend") brings this suit against Brookline's Chief of Police, Daniel O'Leary ("O'Leary") in his individual capacity, alleging violations of 42 U.S.C. § 1983.[1] In Count I of his complaint, Ziskend alleges that O'Leary retaliated against him in violation of his First Amendment rights by dismissing him as an auxiliary police officer after Ziskend brought suit against O'Leary and the Town of Brookline. In Count II, Ziskend alleges that he was dismissed in violation of his rights to due process under the Fifth and Fourteenth Amendments. O'Leary moves for summary judgment as to both claims.

## I. Factual Background

The following facts are undisputed upon the summary judgment record. On September 13, 1983, Ziskend was appointed by the Board of Selectmen of the Town of Brookline (the "Board") to become an auxiliary police officer. (Alan Ziskend Aff. ¶ 12.) On June 28, 1990, O'Leary—then a detective lieutenant on the Brookline Police Force—responded to a call in Brookline where two on-duty police officers reported that Ziskend had displayed a gun in a threatening manner which resulted in the seizure of that weapon and some rifles from Ziskend's car. (O'Leary Aff. ¶ 27(o).)[2] The next day, Ziskend resigned from the auxiliary police. (Id. ¶ 27(p).) On June 9, 1990, Chief of Police George Simard revoked Ziskend's license to carry firearms. (Id. ¶ 27(q).)

The Board voted to re-appoint Ziskend on October 15, 1991. (Kelliher Aff. ¶ 6.)[3] In 1995, O'Leary was appointed Chief of Police. (O'Leary Aff. ¶ 29.) In September of 1997, Ziskend filed suit against O'Leary and the Town of Brookline in Norfolk Superior Court claiming that O'Leary had charged him gun license fees

---

1. O'Leary's motion for summary judgment in a companion case brought against him in his official capacity, *see Ziskend v. O'Leary*, Civ.A. No. 98–10226–WGY, was allowed by the Court on September 29, 1999.

2. O'Leary's affidavit was filed in the companion case mentioned *supra* note 1.

3. Kelliher's affidavit was filed in the companion case mentioned *supra* note 1.

in excess of the amount allowed by law. (Driscoll Aff. ¶¶ 3, 5.)[4] Shortly thereafter, O'Leary asked a friend of Ziskend's on the police force to break the news that Ziskend was no longer wanted on active duty. (O'Leary Aff. ¶¶ 30–31.) In mid to late October, 1997, O'Leary received a letter from Ziskend's lawyer asking him to explain why he "summarily dismissed" Ziskend. (Id. ¶ 23.) On or about October 30, 1997, O'Leary distributed a memorandum to commanding police officers which stated that "[e]ffective this date Alan Ziskin [sic] is no longer a member of the Brookline Police Department's Auxiliary Police Unit; therefore former Sgt. Ziskin is no longer authorized to participate in Auxiliary Police activities or use police vehicles." (Id. ¶ 24.)

On or about December 19, 1997, Ziskend filed a complaint against O'Leary with the Massachusetts Commission Against Discrimination ("MCAD") that alleged the following: "I believe that I was dismissed from my position as a volunteer Brookline Police officer and denied a gun permit on the basis of my religion, national ancestry (Jewish) and in retaliation for filing a law suit which included an allegation of religious discrimination." (O'Leary Aff. ¶ 17.)

## II. Discussion

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

### A. Whether O'Leary Has Qualified Immunity With Respect to Count I

In Count I, Ziskend alleges that he was dismissed from the auxiliary police force in retaliation for his exercise of the First Amendment right to bring suits against government officials. See Perry v. Sindermann, 408 U.S. 593, 597–98, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (holding that nontenured professor cannot be discharged in retaliation for protected speech). For his part, O'Leary argues that under controlling First Circuit precedent he is entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (affording qualified immunity to government officials whose conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known").

■ The First Circuit has unequivocally held that the constitutional right claimed by Ziskend in this case is not "clearly established":

> [N]either the Supreme Court nor [the First Circuit] has ever held that the rule forbidding denial of valuable governmental benefits in reprisal for protected speech announced in Perry v. Sindermann and its progeny extends to the denial of non-compensated positions on voluntary boards. Scant authority in support of such an extension of the doctrine currently exists.

Lynch v. City of Boston, 180 F.3d 1, 14 (1st Cir.1999). It appears that the only authority for the proposition that volunteer positions are protected against retaliatory government discharge comes from the Ninth Circuit case of Hyland v. Wonder, 972 F.2d 1129, 1135 (9th Cir.1992). In that case the Ninth Circuit relied upon its own precedents to hold that a government volunteer turned whistle blower was entitled to protection from retaliatory discharge. See id.

The First Circuit has assumed, without deciding, that such a right may exist, but has held that the right was not "clearly established" as of August, 1994. Lynch, 180 F.3d at 14. Because no other pertinent case law appeared between August of

---

4. Driscoll's affidavit was filed in the companion case mentioned supra note 1.

1994 and October of 1997 when Ziskend was dismissed, the qualified immunity that exists for public officials who discharge volunteers in retaliation for exercising free speech rights is applicable to O'Leary in the instant action.

Ziskend attempts to distinguish *Lynch* by arguing that certain statutory benefits afforded to police volunteers in Massachusetts render it more likely that the First Circuit would rule Ziskend's volunteer position protectable under the standard of *Perry v. Sindermann*. That may well be true, but it does nothing to distinguish the *Lynch* Court's ruling with respect to *qualified immunity*. Thus, the Court ALLOWS O'Leary's motion for summary judgment on Count I.

## B. *Whether Ziskend Has a Protected Property or Liberty Interest*

■ Count II of the Complaint alleges that Ziskend was dismissed without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution. In order to survive on such a theory, Ziskend must demonstrate either a property or liberty interest that merits protection under the Constitution. *See Board of*

*Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). O'Leary argues that Ziskend can show neither of these constitutionally protected interests.[5]

### 1. *Property Interest*

■ State law determines whether a person has a constitutionally protected property interest. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *see also Board of Regents,* 408 U.S. at 577, 92 S.Ct. 2701 ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). Magistrate Judge Alexander has recently gathered case law which together suggests that in order to determine whether a statutorily-created entitlement is a property interest, courts should look to (1) whether the statute limits the discretion of decisionmakers,[6] and (2) "whether a stat-

5. O'Leary also argues that Ziskend cannot state a retaliation or due process claim based upon his alleged termination because he has not, in fact, been terminated. (O'Leary Mem. at 10.) Obviously, a plaintiff who claims that she was terminated without due process of law must show that she was terminated. *See Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). O'Leary argues that his action in removing Ziskend from active duty as an auxiliary police force member is not tantamount to termination. Under Brookline's regulations, only the Board can dismiss an auxiliary police officer. (O'Leary Aff. Ex. 1, ¶ 3.) Because the Board has neither ratified nor adopted O'Leary's actions, he argues that Ziskend has not suffered a constitutional harm.

This argument is too precious. O'Leary sent a notice to all commanding officers of the Brookline Police Department that "[e]ffective this date Alan Ziskin [sic] is no longer a member of the Brookline Police Department's Auxiliary Police Unit; therefore, former Sgt. Ziskin is no longer authorized to participate in Auxiliary Police activities or use police

vehicles." (O'Leary Aff. ¶ 24.) Even without the Board's ratification of that action, Ziskend has both "suffered adverse employment action" and been "constructively discharged" in the sense that, so long as O'Leary is the Chief of Police, Ziskend will not receive auxiliary police force assignments. *See Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994) ("[a] constructive discharge also may occur when an employer effectively prevents an employee from performing his job"); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993) (noting that "constructive discharge" may be shown when plaintiff is subjected to "working conditions so intolerable [ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities"); *Hurley–Bardige v. Brown,* 900 F.Supp. 567, 572 (D.Mass.1995) (defining "adverse employment action" as being "deprived of a term, privilege, or condition of employment").

6. *Compare Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (finding that "the repeated use of explicitly mandatory language in connection with re-

ute has mandatory language in order to determine whether the statute limits a decision-maker's discretion such that it gives rise to a 'legitimate claim of entitlement.'" [7] *Jones–Booker v. United States,* 16 F.Supp.2d 52, 59 (D.Mass.1998); *see also Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981) (noting that "the more circumscribed ... the government's discretion [under substantive state or federal law] to withhold a benefit, the more likely that benefit constitutes 'property'....").

■■■ Under Massachusetts law, at-will employees do not have a property interest in their jobs. *See Ossinger v. City of Newton,* 26 Mass.App.Ct. 831, 834, 533 N.E.2d 228 (1989) (citing *Bishop,* 426 U.S. at 344–47, 96 S.Ct. 2074); *see also Ventetuolo v. Burke,* 596 F.2d 476, 481 (1st Cir.1979) ("A constitutionally protected property interest has not been recognized where the employee serves at the will and pleasure of the public employer."). A statute may confer a fixed tenure, the right to a pre-termination hearing, a "just cause" standard for dismissal, or other indicia of protected status. *See Massachusetts Coalition of Police, Local 165, AFL—CIO v. Town of Northborough,* 416 Mass. 252, 253–55, 620 N.E.2d 765 (1993). Absent such evidence, "[p]ublic employees who do not possess tenure or civil service status do not have a right to notice or a hearing before discharge." *Ruggieri v. City of*

*Somerville,* 10 Mass.App.Ct. 43, 45, 405 N.E.2d 982 (1980). When there is no statute requiring a town to state its reasons for discharge or hold a hearing prior to termination, a town may discharge even a regular police officer "at their pleasure." *Stetson v. Board of Selectmen,* 369 Mass. 755, 759–760, 343 N.E.2d 382 (1976) (noting that "[t]he plaintiff has no property interest in employment as a police officer by the town" because the applicable state law "permits the town's selectmen to discharge a police officer at their pleasure").

■■■ Ziskend attempts to argue that he is entitled to employment during good behavior and can only be removed "for cause." Yet he cites only the statutory provisions that apply to regular, non-voluntary police officers. *See* Mass.Gen.Laws ch. 41 § 97 (stating that, in towns that so elect, "the selectmen may remove [police] officers for cause at any time"). Auxiliary police members are not subject to that statute. Rather, they are appointed pursuant to an act entitled, "An Act to Provide for the Safety of the Commonwealth During the Existence of an Emergency Resulting from Disaster or from Hostile Action." 1950 Mass.Acts 639. The selectmen of a town "may appoint, train and equip volunteer, unpaid auxiliary firemen and auxiliary police...." *Id.* § 11(a). The civil service, public employee retirement, and workers' compensation laws of Massa-

quiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest"), *with Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (finding no protected liberty interest where decisionmakers were given "unfettered" discretion to transfer inmates for "any constitutionally permissible reason or for no reason at all") (citations and internal quotations omitted).

7. *Compare Daniels v. Woodbury County, Iowa,* 742 F.2d 1128, 1132 (8th Cir.1984) (finding mandatory language in Iowa relief statute created a "legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements") (citations and internal quotations omitted), *and Griffeth v. Detrich,* 603 F.2d 118, 121 (9th

Cir.1979), *cert. denied sub nom., Peer v. Griffeth,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980) (holding that state code's mandatory language limited the discretion of intake workers and created legitimate expectations of payment in those who met prescribed standards), *with Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1116 (10th Cir.1991) ("[S]tate law's requirement that zoning decisions be reasonable ... is insufficient to confer upon the applicant a legitimate claim of entitlement."), *Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921, 930–31 (5th Cir.1988) (finding no property interest where statute did not constrain otherwise broad discretion), *and Davis v. Ball Mem'l Hosp. Ass'n,* 640 F.2d 30, 38 (7th Cir. 1980) (indigent patients had no property right because regulations did not mandate assistance when eligibility was found).

chusetts do not apply to such auxiliary police. *See id.* They may perform only those duties prescribed by the appointing authority. *See id.* § 11(c), as amended by 1968 Mass.Acts 579. By police department regulation in Brookline, auxiliary police "serve at the pleasure of the appointing authority." (O'Leary Aff. Ex. 1., ¶ 3.)

Thus, because Ziskend's status as an unpaid, volunteer auxiliary police member was terminable at will by the Board, he does not have a property interest under applicable state law. *See Stetson,* 369 Mass. at 759–60, 343 N.E.2d 382.

### 2. *Liberty Interest*

In order to demonstrate a protected liberty interest, Ziskend would have to show one of the following two reputational harms:

> There are two ways in which appellant's constitutional liberty interest could be implicated. First, if Martinez made "any charge against him that might seriously damage his standing and association in (the) community." Second, whether Martinez "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."

*Ventetuolo,* 596 F.2d at 482–83 (citations omitted). Ziskend has not attempted to make either of these showings.[8] The available evidence suggests that he could not. The Complaint makes no allegation that Ziskend has experienced loss of employment as a result of his dismissal from the auxiliary police force. There is no evidence that O'Leary publicly disseminated any false or defamatory information concerning his reasons for acting against Ziskend. Indeed, there is no evidence that

O'Leary actually disseminated any reasons whatsoever for dismissing Ziskend. The only evidence in the record concerning the dismissal is the short written notice by O'Leary to other members of the Police Department that "[e]ffective this date Alan Ziskin [sic] is no longer a member of the Brookline Police Department's Auxiliary Police Unit; therefore former Sgt. Ziskin is no longer authorized to participate in Auxiliary Police activities or use police vehicles." O'Leary Aff. ¶ 24. This action is insufficient as matter of law to ground a claim for violation of Ziskend's liberty interests.

Because Ziskend was an at-will volunteer without a property interest under state law, and because Ziskend has neither alleged nor argued facts sufficient to create a triable issue with respect to reputational liberty interests, O'Leary's motion for summary judgment with respect to Count II is ALLOWED.

### III. *Conclusion*

For the foregoing reasons, the Court ALLOWS O'Leary's motion for summary judgment (Docket # 4).

---

8. Ziskend does argue that O'Leary harmed his reputation by disseminating certain reasons for terminating Ziskend during the MCAD proceedings and in subsequent federal lawsuits. (Pl.'s Opp. at 13.) These disclosures, however, occurred only *after* Ziskend had brought suit against O'Leary and, even then, only within the context of the administrative and judicial proceedings. Such disclosures

are insufficient as matter of law to ground a claim for deprivation of a liberty interest. *See Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) ("Only if the employer creates and disseminates a false and defamatory impression about the employee *in connection with his termination* is such a hearing required.") (emphasis added).